In the Matter of OUR LADY OF GOOD COUNSEL ROMAN CATHOLIC CHURCH AND SCHOOL et al., Respondents, v. IRA M. BALL, as Commissioner of the State Bingo Control Commission, et al., Appellants, et al., Respondent.

Second Department, June 17, 1974.

*Louis J. Lefkowitz, Attorney-General (David H. Berman* and *Samuel A. Hirshowitz* of counsel), for Ira M. Ball and another, appellants.

*Johnson, Tannen, Katzman, Fishman & Feit, P. C. (Robert J. Fishman* and *David M. Schwarz* of counsel), for Victory Hall, Inc., appellant.

*John S. Zachary, P. C. (John A. Purpuka* of counsel), for respondents.

MARTUSCELLO, Acting P. J.   The principal issue in this proceeding under article 78 of the CPLR is whether an interim change in the law should affect the determination of a pending application for a bingo license which should have been issued prior to the change.   Subsidiary to this is the threshold issue of whether holders of bingo licenses who are " authorized organization[s] " have standing to sue to annul a bingo license granted to a " commercial lessor ".

Article 14-H of the General Municipal Law, entitled " Local Option for Conduct of Bingo by Certain Organizations ", provides for two classifications of holders of bingo licenses.   One is an " authorized organization " defined in subdivision 4 of section 476 of the General Municipal Law as a bona fide religious, charitable, educational, fraternal, civic, service, veterans or volunteer firemen's organization which operates without profit and which for at least one year prior to application for a bingo license was engaged in serving one or more of the generally public-spirited or religious purposes set forth in subdivision 6 of section 476.

The other is an " authorized commercial lessor " which is an entity other than an " authorized organization " and which is permitted to lease its premises to an " authorized organization " for particular bingo play (General Municipal Law, § 476, subd. 9).

Sections 480 and 481 of the General Municipal Law state the procedure and some of the requirements for application for and issuance of a license to conduct bingo.   The application is initially made to the municipality, which shall conduct an investigation.   In New York City the pertinent agency is the Depart-

ment of Consumer Affairs (hereinafter referred to as the City Department) (Administrative Code of City of New York, ch. 32, tit. A, § 773–2.0, subd. b). As to applicants for a commercial lessor's license (General Municipal Law, § 480, subd. 2; § 481, subd. 1, par. [b]), if the municipal agency finds the applicant is qualified and satisfies the statutory requirements and, *inter alia,* if the State Bingo Control Commission (hereinafter referred to as State Commission) has approved as fair and reasonable the applicant's schedule of maximum rentals for each occasion of play, the municipal agency issues such license.

On February 27, 1973 appellant Victory Hall, Inc. applied to be licensed as an authorized commercial lessor to conduct bingo at 181 Bay Street, Staten Island, New York. The four principals of the corporation made a large investment of money in connection with altering and preparing the premises to comply with governmental regulations.

The application was filed with both the City Department and the State Commission. The City Department investigated the principals of the corporation and found them to be of good moral character. The place of assembly permit was issued on March 2, 1973 and received by the City Department on March 7, 1973. However, despite persistent and continuous inquiry by Marvin Bortnick, an officer of Victory Hall, beginning the second week of March, 1973, to the Assistant Director of Bingo Operations of the City Department, the City Department failed to report the satisfactory conclusion of its investigation to the State Commission.

The penultimate step towards the issuance of the commercial lessor's license by the City Department is the afore-mentioned approval by the State Commission of the applicant's proposed schedule of maximum rents; upon receipt of such approval the City Department issues the license. However, the record shows that it was the established policy of the State Commission not to consider rent schedules until it had word from the municipal agency that the principals of the proposed licensees have been approved. As stated by an official of the State Commission, the reason was " very frankly, because we did not want to spin our wheels and take on something that might turn out to be unnecessary unless the City was about to issue a license ". Thus, both the State and City agencies did nothing towards completion of the processing of the license application, the State Commission because it had received no word as to approval of the personal qualifications of the principals of the applicant, and the City Department because it had received no word as to approval of the maximum rental rates.

On April 3, 1973, while Victory Hall's application was in this state of limbo, an amendment to paragraph (b) of subdivision 1 of section 481 of the General Municipal Law was approved and became effective immediately (L. 1973, ch. 142, §§ 3, 4). The amendment provided that "in cities having a population of one million or more" an additional requirement for issuance of a license to a commercial lessor is a finding by the municipal agency "that there is a public need and that public advantage will be served by the issuance of such license".

Following enactment of this amendment the City Department required Victory Hall to submit evidence to it at a hearing that there was a public need for issuance of the license and that public advantage would be served. It decided on August 13, 1973 that Victory Hall had not met this burden.

Pursuant to section 493 of the General Municipal Law, Victory Hall appealed to the State Commission. It claimed that the statute in effect prior to the April 3, 1973 amendment should apply because the delay in the processing of the application was not its fault. On November 28, 1973 the State Commission held a hearing and received evidence from Victory Hall and employees of both the City and State agencies. On December 20, 1973 the State Commission unanimously reversed the decision of the City Department, stating:

" This decision is based solely upon the facts that the said Department had sufficient time, prior to April 3, 1973, within which to process the application of Victory Hall, Inc., for a commercial lessor's license. The undisputed facts, in this regard, disclose that the application was filed in said Department on February 27, 1973; that the officers and stockholders were fingerprinted and found to be of good moral character prior to April 3, 1973 and that a valid Place of Assembly Permit was issued on March 2, 1973 and received by the Department on March 7, 1973. The only matter remaining was for the Department to notify this Commission that its preliminary investigation had been completed and that a commercial lessor's license would be issued after this Commission had issued a fair and reasonable rent schedule as required by Section 481, 1 (b) of the General Municipal Law, the procedure heretofore followed between the Department of Consumer Affairs and this Commission.

" The record does not contain any reason or explanation as to why the usual procedure was not followed. Had the customary procedure been followed, the Commission would have had ample opportunity to issue a fair and reasonable rent schedule

prior to April 3, 1973, the effective date of Chapter 142 of the Laws of 1973.

" In the interest of justice, we do not believe that the applicant should be penalized under the foregoing facts.

" In view of the foregoing, the Commission need not decide the issues of ' public need and that public advantage will be served ' in this case."

On February 20, 1974, the petitioners instituted this proceeding under article 78 of the CPLR in the Supreme Court, Richmond County, to annul the determination of the State Commission, to enjoin the City Department from issuing a commercial lessor's license to Victory Hall and to enjoin Victory Hall from conductng bingo at its premises.

The petition alleged the petitioners to be " authorized organizations " licensed to operate bingo games who " will suffer severe economic damages and loss of income " if Victory Hall were granted a commercial lessor's license, that Victory Hall's license application was subject to paragraph (b) of subdivision 1 of section 481 of the General Municipal Law, as amended on April 3, 1973, and that therefore the determination of the State Commission should be treated as a nullity and the license issued deemed void as a matter of law.

On March 20, 1974, an order was made by the Special Term, (1) denying a motion by the State Commission (which motion Victory Hall supported) to dismiss the petition on the ground that the petitioners lacked standing to sue and (2) directing the State Commission to file an answer to the petition. By the judgment under review, dated April 25, 1974 the Special Term revoked the license which had been issued by the City Department pursuant to the State Commissioner's order. The underlying decision of the Special Term ruled that the State Commission's failure to apply the requirements of the amended statute to Victory Hall's application was arbitrary and capricious.

### I.

We agree with the Special Term's conclusion that these petitioners, as " authorized organizations ", had standing to seek nullification of a bingo license issued to a " commercial lessor ".

We recognize and reaffirm the general rule that threatened economic loss to an existing licensee does not of itself confer standing to object to the issuance of a license to a competitor (*Matter of Franklin Nat. Bank* v. *Superintendent of Banks of State of N. Y.*, 40 Misc 2d 565, affd. 20 A D 2d 682, mot. for lv. to app. den. 14 N Y 2d 482; *Matter of Nostrand Check Cashing Co.* v. *Clark*, 27 Misc 2d 799, affd. 13 A D 2d 922; *Matter of Bank*

v. *Allen,* 58 Misc 2d 150, affd. 35 A D 2d 245; *Matter of Dairymen's League Co-op. Assn.* v. *Du Mond,* 282 App. Div. 69, app. dsmd. 306 N. Y. 595; *Matter of Paolangeli* v. *Stevens,* 19 A D 2d 763).

The rationale for this rule is well stated in *Baltimore Retail Liq. Package Stores Assn.* v. *Board of License Comrs.* (171 Md. 426, 429–430): '' It was not within the purpose of the statute to restrict competition for the benefit of any licensee; and in the accomplishment of the purpose which was sought, whatever it may have been, the petitioners are entirely without special interest.''

However, the purpose of the amendment to paragraph (b) of subdivision 1 of section 481 of the General Municipal Law was in fact to restrict competition from commercial lessors for the specified benefit of bingo licensees who were authorized organizations; the latter *were* in fact given a special interest. The Legislature has so stated in clear precise language.

Section 3 of chapter 142 of the Laws of 1973 sets forth the afore-stated amendment. It is preceded by a statement of legislative finding and declaration (§ 1) that bingo '' should be so regulated and adequate controls so instituted as to discourage commercialization in all its forms, including the rental of commercial premises for bingo games, and to ensure a maximum availability of the net proceeds of bingo exclusively for application to the worthy causes and undertakings specified in the laws of this state regulating the conduct of bingo.'' In section 2 the Legislature further declared that '' there presently exists an emergency with regard to the licensing of new commercial lessors * * * in the city of New York caused by the proliferation of commercial bingo halls and the consequent diversion of the net proceeds of bingo from the charitable, educational, scientific, health, religious, civic and patriotic causes and undertakings sponsored by the authorized organizations conducting bingo to and for the profit of such commercial lessors.''

The Legislature thus unquestionably conferred upon authorized organizations in New York City the right to be protected from competition from new applicants for commercial lessor's licenses, to '' guarantee freedom from the economic injury which may result from competition '' (*Matter of Nostrand Check Cashing Co.* v. *Clark,* 27 Misc 2d 799, 800, affd. 13 A D 2d 922, *supra*) from new commercial lessors, and such protection necessarily involves giving them standing to sue.

Victory Hall further alleges that the petitioners' right to sue is barred by section 305.2 of the Rules and Regulations of the State Bingo Control Commission (19 NYCRR 305.2), which

limits the institution of proceedings to revoke bingo licenses to those brought by the municipal or State agencies.

Section 305.2 reads as follows: "Proceedings to revoke a license issued pursuant to the bingo licensing law may be instituted either by the municipal governing body or by the commission, on its own initiative or on complaint of any person, including any public official or agency."

It is apparent that this section relates to the traditional revocation proceeding, i.e., an attack on a license where the original issuance is not questioned, but an abuse by the licensee is claimed. Thus, if it is called to the attention of either the State or City agency that prizes are being awarded fraudulently or that licensees are overcharging or not abiding by the appropriate regulations, a proceeding may be instituted by such governmental agency to revoke the licenses. If a private person or a private or public organization has information of such conduct, it may not institute a revocation proceeding, but is limited to a complaint to the State or City agency. This is entirely sensible, for the governmental agency can then conduct its own investigation and police its regulations and the requirements of law.

The proceeding herein is not truly a revocation proceeding, but one to annul a license *ab initio* as improperly granted. There would be no rationale for one who complains of the issuance of a license to be required to resort to the agency which issued it, especially when the issuance was based on a policy decision (i.e., that license applications unduly delayed by the issuing agency are not subject to an amendment of the statute) against which the complainer can supply no relevant factual information and the propriety of which must eventually be decided by the court.

## II.

However, we believe that the decision of the State Commission that Victory Hall was not subject to the requirements of the amendment of the statute was correct.

The State Commission, based on its special expertise as to the normal processing of an application by a would-be commercial lessor, concluded that the City Department's unexplained failure to notify the State Commission that its preliminary investigation had been completed was the sole cause for the nonissuance of the license prior to the effective date of the amendment and held that in the interest of justice the applicant should not be penalized. In effect, it concluded that it would consider that done which should have been done.

The Special Term made a distinction between willful, deliberate delay by a governmental agency in processing a license application, in which case an applicant might not be subject to the requirements of an amendment of a statute (see *Matter of Fairchild Sons* v. *Rogers,* 242 App. Div. 651, affd. 266 N. Y. 460; *Matter of Dubow* v. *Ross,* 254 App. Div. 706; *Matter of Calton Court* v. *Switzer,* 221 App. Div. 799), and delay, albeit unreasonable, which was not proved by the applicant to be willful and deliberate. In the latter case, held the Special Term, the applicable law is that in effect at the time of determination.

We do not agree. The rule that willful delay by a governmental agency or employee exempts the applicant from the onerous strictures of an amendment of a statute, or of a new statute, is one based on fairness and equity. It would be no less unfair to penalize an innocent and diligent license applicant because delay was due to negligent rather than willful nonfeasance.

We hold that where a license would have been granted under the law as it existed at the time the application for the license should have been passed upon, the application will not be subject to the onerous strictures of an amendment of the pertinent statute or regulation, or of a new statute or regulation, and that it matters not whether the application was innocently or deliberately filed and forgotten (see 45 N. Y. Jur., Permits and Licenses, § 20; Ann. 169 A. L. R. 585; *Sgromolo* v. *City of Asbury Park,* 134 N. J. L. 195; *Rubin* v. *City of Rockford,* 296 Ill. App. 650).

The judgment should be reversed, on the law, without costs, the petition dismissed on the merits and the license reinstated.

LATHAM, COHALAN, BRENNAN and MUNDER, JJ., concur.

Judgment of the Supreme Court, Richmond County, dated April 25, 1974, reversed, on the law, without costs, petition dismissed on the merits and license of appellant Victory Hall, Inc. reinstated.