In the Matter of PARKCHESTER APTS. Co., Respondent, v LOUIS
   J. LEFKOWITZ, as Attorney-General of the State of New
   York, Appellant, and MARY WINFIELD et al., Intervenors-
   Appellants.

First Department, March 4, 1976

*Shirley Adelson Siegel* of counsel *(Samuel A. Hirshowitz* with her on the brief; *Louis J. Lefkowitz, Attorney-General),* for appellant.

*Harry H. Lipsig, P.C. (Joseph P. Napoli* with him on the brief), attorney for intervenors-appellants.

*Edward N. Costikyan* of counsel *(Jack Hassid* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for respondent.

*Per Curiam.* Petitioner-respondent Parkchester Apts. Co., hereinafter Parkchester, submitted a condominium offering plan for filing to the Attorney-General which involved the North Quadrant of the Parkchester housing complex. After the Attorney-General's acceptance, an article 78 proceeding was commenced by certain tenants *(Matter of Whalen v Lefkowitz,* 36 NY2d 75, hereinafter *Whalen),* wherein the criteria for review of the plan by the Attorney-General under the General Business Law (§ 352-e) and the accuracy of representations in the filed material were questioned. Parkchester's second offering, which is the subject matter of this proceeding, involves the remaining quadrants—the South, East and West Quadrants (hereinafter the South Quadrant). The offering plan for the South Quadrant was submitted for filing with the Attorney-General in November, 1973. The Attorney-General refused to act on this plan solely because of the pendency of the *Whalen* proceeding. Accordingly, Parkchester commenced this proceeding to compel the Attorney-General to act and

obtained a judgment (SAYPOL, J.), entered January 28, 1974, wherein the Attorney-General was directed to review within 15 days the South Quadrant plan and either issue a letter accepting the filing or notifying petitioner of deficiencies. We affirmed this judgment on May 16, 1974, with the observation that "[t]he Attorney-General took the position that while he was of the opinion that his acceptance for filing merely certified that the sponsor had submitted the data required by statute and did not attest to the accuracy of that data, Special Term's determination in the *Whalen* petition implied otherwise, and he was not prepared to accept the petition without further investigation. The Attorney-General's concept of his duties in this regard is quite correct [citation]. That being so, Special Term's direction that he act in the matter with reasonable dispatch is likewise correct" *(Parkchester Apts. Co. v Lefkowitz,* 44 AD2d 442, 444-445). Nevertheless, the Attorney-General continued in his refusal to review the South Quadrant plan, citing the pendency of the *Whalen* matter in the Court of Appeals and contending that the quadrants of the Parkchester complex were so interrelated that he could not review the South Condominium offering plan while the prospectus for the North Quadrant Condominium was in litigation. On February 17, 1975, the Court of Appeals affirmed, stating that "the Attorney-General was not justified in refusing to review petitioner's resubmission, 'even for the purpose of determining whether specific deficiencies have been rectified, or new ones found to exist', solely on the ground that litigation was pending with respect to a related property. (Cf. *Matter of Whalen v. Lefkowitz,* 36 N Y 2d 75.)" *(Matter of Parkchester Apts. Co. v Lefkowitz,* 36 NY2d 688, 689.)

During the pendency of these appeals a stay of Special Term's (SAYPOL, J.) judgment remained in effect pursuant to CPLR 5519. Also, during the appellate process, the Legislature enacted chapter 1021 of the Laws of 1974, effective June 15, 1974, whereby section 352-e of the General Business Law was amended to declare that no offering plan can become effective unless 35% of the tenants in occupancy agree to purchase their apartments, even if the sponsor waives his right to evict nonpurchasing tenants, which Parkchester had, in both offering plans (General Business Law, § 352-e, subd 2-a, par 1, cls [i], [ii]). On March 26, 1975, Parkchester requested that its offering plan, as updated, be reviewed in accordance with Special Term's judgment. The Attorney-General, by letter

dated March 27, 1975, refused to review the plan solely on the ground that it did not contain a statement in conformity with the new law, i.e., the 35% requirement. Subsequently, Parkchester moved for a supplemental judgment in this proceeding, directing the Attorney-General to review the South Quadrant plan in accordance with the law in effect on November 26, 1973, or, alternatively, declaring the new law unconstitutional.

Special Term (citing CPLR 103, subd [c], *sua sponte)* severed Parkchester's motion from this proceeding and deemed it a separate article 78 proceeding, treating the affidavits in support and in opposition to the motion as a petition and an answer. Under CPLR 103 (subd [c]), the court is authorized, once it has jurisdiction over the parties, to retain a civil judicial proceeding even though not brought in the proper form. Under CPLR 105 (subd [d]), a civil judicial proceeding is a prosecution of *an independent application* to the court for relief. CPLR 103 (subd [c]) evolved from a provision that would have permitted the court to convert even a motion into a civil judicial proceeding (see 1 Weinstein-Korn-Miller, NY Civ Prac, par 103.08). The jurisdictional predicate for Special Term's treatment of the motion as a civil judicial proceeding inheres not in the service of the motion papers effected herein, but in the jurisdiction obtained over the parties in the article 78 proceeding brought by Parkchester to compel the Attorney-General to act and which culminated in the judgment of SAYPOL, J. entered January 28, 1974. As a consequence, treatment of the motion as an *independent* application to the court for relief is improper because no jurisdictional basis existed for doing so. Parenthetically, note is taken of the interesting observation that "[i]mproperly commencing an action or special proceeding as a motion would be prejudicial only if it involved a failure to obtain jurisdiction over the person by proper service of process, but this situation is excluded by the opening phrase of CPLR 103(c)" (1 Weinstein-Korn-Miller, NY Civ Prac, par 103.08).

Parkchester appropriately sought a supplemental judgment in the instant proceeding and was not required to commence a new proceeding. It sought no change in substance from the original judgment. Indeed, the provisions of the judgment now on appeal accomplish nothing more than what would have been accomplished had the Attorney-General, instead of appealing from the judgment of SAYPOL, J., implemented that

judgment in accordance with its terms. The direction sought by Parkchester to the effect that Attorney-General apply the law in existence at November 26, 1973, is fully compatible and implemental of the prior judgment without any change in the rights of the parties as a matter of substance (see *Herpe v Herpe,* 225 NY 323; 9 Carmody-Wait 2d, New York Practice, §§ 63:157, 63:158; see, also, *Matter of Chrysler Props. v Morris,* 23 NY2d 515).

Dispositive of the merits of this appeal is the holding in *Matter of Our Lady of Good Counsel R. C. Church & School v Ball* (45 AD2d 66, affd on opn of MARTUSCELLO, Acting P.J., 38 NY2d 780) to the effect that a negligent delay by a governmental agency, no less than a willful one, which prevents the issuance of a license until after the amendment of the governing statute, will afford grounds for applying the pre-existing law to the application. It was pertinently noted that "[t]he rule that willful delay by a governmental agency or employee exempts the applicant from the onerous strictures of an amendment of a statute, or of a new statute, is one based on fairness and equity. It would be no less unfair to penalize an innocent and diligent license applicant because delay was due to negligent rather than willful nonfeasance" *(Our Lady R. C. Church v Ball, supra,* p 73). Relevant to considerations of fairness and equity, Special Term (FINE, J.) perceptively noted that the Attorney-General's claim that failure to consider the South Quadrant plan was neither willful nor negligent was inconsistent with his acceptance for filing of other plans despite the decision of SPECTOR, J. in *Whalen.* It was also noted that the gravamen for the delay urged by the Attorney-General, to wit, that the South, East and West Quadrants had to be treated in an identical manner to the North Quadrant, "has ironically resulted in a situation where the attorney general is now in effect arguing that those three quadrants must be treated differently from the North Quadrant".

Nothing in the legislative history or the wording of chapter 1021 of the Laws of 1974 suggest retroactive application either to filings pending in the office of the Attorney-General or to plans that had not yet become effective though already accepted for filing, prior to the statute's effective date. It is a settled rule that legislation will be construed as prospective only, in the absence of legislative expressions to the contrary either expressly or by necessary implication (1 McKinney's Cons Laws of NY, Book 1, Statutes, § 51, subd b). The salutary

aspect of application of this rule in the instant matter forms a basis for avoidance of serious questions concerning the constitutionality of chapter 1021. It is also noted that Parkchester's South Quadrant plan could be considered as pending in the Attorney-General's office from November, 1973, assuming that was necessary in justifying the avoidance of chapter 1021, for the reason that the Attorney-General actually cited five deficiencies in the plan which Parkchester was prepared to cure.

Finally, the attempt by the petitioner-respondent to update its plan and prospectus does not warrant the conclusion that a fresh filing was engaged in, but is viewed as a ministerial function clearly warranted by reason and circumstances and in avoidance of possible rejection for incompleteness.

The judgment, Supreme Court, New York County (FINE, J.), entered October 10, 1975, treating petitioner's motion for a supplemental judgment as a separate article 78 proceeding, severing it from the proceeding bearing the caption herein that had been commenced in 1973, and, on the merits, directing the Attorney-General to review petitioner's offering plan in accordance with law in effect on November 26, 1973, should be modified on the law to the extent of deleting the reference to a severance and treatment of the motion as a separate article 78 proceeding while granting the motion for a supplemental judgment and, as so modified, the judgment should be affirmed, without costs and disbursements.

STEVENS, P.J., KUPFERMAN, LUPIANO, BIRNS and LANE, JJ., concur.

Judgment, Supreme Court, New York County, entered on October 10, 1975, unanimously modified, on the law, to the extent of deleting the reference to a severance and treatment of the motion as a separate article 78 proceeding while granting the motion for a supplemental judgment and, as so modified, the judgment is affirmed, without costs and without disbursements.