Edwin Kassoff, J.
This is a CPLR article 78 proceeding by petitioner landlords to review and annul those portions of the determinations of respondent Commissioner of the Office of Rent Control of the City of New York which denied the protests filed by them and which conditioned the conversion of electrical service from a rent inclusion basis (master metering) to an exclusion basis upon certain rental reductions in accordance with a schedule promulgated on March 25, 1975, and further, upon the installation by petitioners of electrical outlets in tenants’ apartments.
The apartments in question are in a seven-building complex constructed in 1939 and 1940 and known as Forest Hills South. The buildings contain a total of 608 apartments of which 162 are subject to the Rent Stabilization Law and Code (see Parkview Holding Corp. v New York City Conciliation & Appeals Bd., Index No. 12035/75, decided simultaneously herewith), while the remaining 446 apartments are subject to the city rent law.
In November, 1973 the petitioners filed an application with the district rent office to discontinue electric service on a rent inclusion basis and to convert to an individual metering system, with Consolidated Edison billing the tenants directly. Petitioners allege that by March, 1974 they had completed all the electrical work necessary to effect the transfer. The subject tenants thereafter commenced an action to enjoin the *572 landlords from proceeding, asserting that the 1968 rent decrease schedule on which such a change-over would be conditioned did not reflect the "present rental value” of the service to be eliminated and that the 1968 Administrator’s Interpretation No. 7 was obsolete. That action appears to have been discontinued by stipulation between the landlords and tenants in which the landlord agreed to defer electric changeover so that the rent commissioner could first update the rent decrease schedule (Cohen v Forest Hills South, Index No. 2770/ 74). During this period other applications by different landlords, for similar changeovers were submitted with other tenant groups opposing the rental decrease based on obsolescence. In consequence, the rent control office held all such proceedings in suspense pending revision of the rent decrease schedule. Seemingly in contravention of its stipulation, petitioners, by way of an action for a declaratory judgment and for an injunction, sought to restrain the HDA from revising the rent decrease schedule and to compel it to issue a determination based solely on the basis of the 1968 schedule of rent reductions. The Appellate Division characterized and converted the proceeding into an article 78 proceeding and granted final judgment for petitioners directing the HDA to render a determination within 30 days (Parkview Holding Corp. v Starr, 47 AD2d 639, lv to app den 37 NY2d 776). The Appellate Division stated: "Plaintiff landlords’ applications to transfer electrical service from a rent inclusion basis to a direct payment basis in accordance with the existing schedule for rent decreases were admittedly filed in November, 1973. The respondent city officials have delayed their determination pending approval by the State Rent Commissioner of a revised schedule of decreases, as mandated by statute (L 1971, ch 1012). On the record, a proceeding under article 78 of the CPLR in the nature of mandamus is the appropriate remedy. Administrative officials may not refuse to make whatever determination they consider appropriate on plaintiffs’ applications within a reasonable time.” The court did not, however, enjoin the adoption of a revised schedule and by March 21, 1975 Revised Interpretation No. 7 was issued, and on March 27, 1975 petitioners’ application for a changeover was granted conditioned upon a rental decrease under the revised schedule. The landlords and tenants filed protests, and respondent considered the matter de novo. The protests were ultimately denied but the district rent director’s orders were modified to the extent of permitting the tenants to request additional air *573 conditioning and electrical outlets which were to be installed at the landlord’s expense and for which the landlord might qualify for an appropriate rent increase.
The right to discontinue unlimited-unmetered electrical service and whether such a changeover required a rental reduction in excess of that contained in the revised schedule has been determined adversely to the tenants in an article 78 proceeding brought by them and in which the instant petitioners were granted leave to intervene (Matter of Cohen [Joy], NYLJ, Feb 25, 1976, p 6, col 2). The petitioner landlords here contend that the rent decreases should be in accordance with the 1968 schedule and that installation of outlets should not be a condition of the changeover.
Underlying petitioner landlords’ contentions is the theory of a prejudicial administrative delay as expressed in Matter of Our Lady of Good Counsel Roman Catholic Church v Ball (45 AD2d 66, affd 37 NY2d 809), Matter of Parkchester Apts. Co. v Lefkowitz (NYLJ, Oct 14, 1975, p 11, col 1, affd 51 AD2d 277) and Matter of Vanderbilt 77th Assoc. v Conciliation & Appeals Bd. (NYLJ, Aug 14, 1975, p 6, col 2, mod 51 A D 2d 946). These cases hold that the willful or negligent failure of an administrative agency to act shall not operate to prejudice an innocent applicant by thrusting upon that applicant the burden of compliance with amendments or revisions initiated during the period of the agency delay.
Matter of Our Lady of Good Counsel Roman Catholic Church v Ball (supra) involved an application for the issuance of a bingo license, a three-step procedure involving: first, investigation by the New York City Department of Consumers Affairs; second, approval by the State Bingo Control Commission of the applicant’s proposed schedúle of maximum rent; and third, upon receipt of such State approval, the city department’s issuance of the license. Although the city department had favorably completed its investigation and issued an assembly permit, it failed to report the results to the State Commissioner whose policy it was not to consider rent schedules without communication from the municipal agency. Thus, neither agency did anything. In this period an amendment to the General Municipal Law was enacted, engrafting the additional requirement for the issuance of a license that there be a public need for such issuance and that a public advantage would thus be obtained. The city department directed the applicant to submit evidence to show compliance with the amendment and after a hearing determined that it had not *574 met its burden. The State Commissioner reversed and applied the statute as it existed prior to the amendments. The Appellate Division, in reversing Special Term, stated (45 AD2d 66, 73, supra): "The rule that willful delay by a governmental agency or employee exempts the applicant from the onerous strictures of an amendment of a statute, or of a new statute, is one based on fairness and equity. It would be no less unfair to penalize an innocent and diligent license applicant because delay was due to negligent rather than willful nonfeasance.”
Matter of Parkchester Apts. Co. v Lefkowitz (supra) involved the refusal of the Attorney-General to review and accept for filing a plan for the conversion of Parkchester South, East and West Quadrants to condominium ownership pending the outcome of litigation involving Parkchester North Quadrant. In January, 1974 Parkchester South, East and West Quadrants obtained a judgment directing the Attorney-General to review the offering plans. In May, 1974 the judgment was affirmed. The General Business Law was amended in June, 1974 prohibiting the Attorney-General from approving any offering plan which did not provide that consent of at least 35% of all tenants had been obtained. After the amendment of the law the Court of Appeals affirmed the mandamus judgment and decided the issues raised in the Parkchester North Quadrant litigation. The court stated (36 NY2d 688, 689):
"We conclude that the Attorney-General was not justified in refusing to review petitioner’s resubmission, 'even for the purpose of determining whether specific deficiencies have been rectified, or new ones found to exist,’ solely on the ground that litigation was pending with respect to a related property (Cf. Matter of Whalen v Lefkowitz, 36 NY 2d 75).
"Accordingly, the order of the Appellate Division should be affirmed. We do not reach the issue tendered on oral argument as to the application in this case of chapter 1021 of the Laws of 1974.” Upon submission of the plan once again the Attorney-General refused to review on the ground that it did not contain a statement in conformity with the amended law. In a new application, Special Term stated (NYLJ, Oct 14, 1976, p 11, col 1, supra):
"Significantly, after the Sept. 18, 1973 decision in Matter of Whalen (supra), the Attorney-General continued to review and accept for filing other offering plans for conversion of other residential premises to co-operative or condominium ownership. * * *
*575 "[s]uch acceptance of other offering plans is essentially inconsistent with its refusal to consider for filing the Offering Plan here at issue. Furthermore, the Attorney-General’s repeated argument that his refusal to consider that Offering Plan for filing was justified because of the need to treat the South, East and West quadrants in an identical manner to the North quadrant has ironically resulted in a situation where the Attorney-General is now in effect arguing that those three quadrants must be treated differently from the North quadrants.”
Finally, in Matter of Vanderbilt 77th Assoc. v Conciliation & Appeals Bd. (supra), a proceeding involving an application for a building-wide comparative hardship rent increase, the court simply restated the principles outlined and remanded the matter for a hearing.
The cases are distinguishable. While there can be no doubt that the city rent offices should have made some determination of the application, the delay was neither negligent nor willful. Nor is there any evidence of the selectivity encountered in Matter of Parkchester Apts. Co. v Lefkowitz (supra). The cause of the delay, rather than the delay itself, is the focus of these cases. The revision of the schedules had a rational basis and was prompted by the unquestioned necessity for a realistic appraisal of what constitutes the "present value” of electric service viewed against the background of a rampant inflation. Petitioners had no vested interests in the continuance of the old law. Thus, petitioners have failed to demonstrate that the determinations were either arbitrary, capricious, or contrary to law.
Accordingly the application is denied and the petition dismissed.