In the Matter of TALEFF REALTY CORP., Respondent, v DANIEL W. JOY, as Commissioner of the Office of Rent Control, Department of Rent and Housing Maintenance of the City of New York, Appellant.

In the Matter of SEVEN PARK ASSOCIATES, Respondent, v DANIEL W. JOY, as Commissioner of the Office of Rent Control, Department of Rent and Housing Maintenance of the City of New York, Appellant.

In the Matter of AMSTERDAM-MANHATTAN ASSOCIATES, Respondent, v DANIEL W. JOY, as Commissioner of the Office of Rent Control, Department of Rent and Housing Maintenance of the City of New York, Appellant.

First Department, December 6, 1976

*Florence R. Zimmerman* of counsel *(Harry Michelson,* attorney), for appellant.

*Irving Weissman* for Taleff Realty Corp., respondent.

*Robert S. Fougner* of counsel *(McLaughlin & Fougner,* attorneys), for Seven Park Associates and Amsterdam-Manhattan Associates, respondents.

LUPIANO, J. We are concerned here with three separate appeals in article 78 proceedings brought by respective landlords to review determinations of the Office of Rent Control applying an updated schedule of the rental value of electric service now being excluded from maximum rents. The critical issue common to each proceeding is the propriety of the rent commissioner's action in adopting an updated schedule of rent decreases to be applied in cases where landlords choose to terminate the supply of electrical service for which they are compensated by an enhanced maximum rent and, in lieu thereof, to place their tenants on a direct billing basis with Con Edison. In adopting such updated schedule, the Office of Rent Control delayed the processing on a system-wide basis of all applications for electric exclusion decrease orders while it was concerned with the preparation of the updated schedule of the rental value of electric inclusion. Before analysis of the proceedings, it is well to set forth a chronology and general observations applicable to each.

Rent Administrator's Interpretation No. 7, revised December 27, 1968 and published January 2, 1969, provides in pertinent part with respect to tenants' receiving unmetered electric current as a service included in the rent that "[t]he rewiring of a building has been uniformly held to be a major capital improvement and in order to foster such improvements the Administrator deems it appropriate to permit the decrease of such service where the rewiring of the entire structure is contemplated. The landlord shall apply * * * for permission to discontinue such service to the tenants and should set forth the fact that he has entered into a valid contract for the rewiring of the building in accordance with the provisions of Administrator's Interpretation No. 1 and that he will pay all costs attendant the installation of meters and the transfer of service from the public utility company to the tenants on a metered basis or has previously rewired the building in accordance with Administrator's Interpretation No. 1. The landlord will also be required to consent to the *reduction of the*

*maximum rents in an amount which will reflect the present rental value of the service previously supplied by him and is appropriate in accordance with the schedule hereinafter set forth*" (emphasis supplied). In October, 1973, the Arab oil embargo set in motion a steep rise in fuel prices, which escalation continued into 1974. Commencing in March, 1974, the increased cost of fuel began to be reflected in the increased cost of electricity. About this time, the rent commissioner imposed a freeze on the processing of all landlord applications under Administrator's Interpretation No. 7. Finally, on March 21, 1975, the Office of Rent Control issued a newly revised Administrator's Interpretation No. 7 which was published March 26, 1975 and which supersedes the prior Interpretation No. 7 (revised Dec. 27, 1968). In relevant part, this new Interpretation No. 7 declares "some landlords no longer find it economically feasible to install adequate wiring in a building where the electric current is included in the rent. Further, even where a building was previously rewired, the landlord may find that the present cost of supplying electric service to the tenants has made this arrangement uneconomical. In any event *the cost index for electricity has increased markedly since the date on which the original rental value was established and the substantially higher level of present day costs of electric current requires updated schedules*" (emphasis supplied). The order permitting the change from rent inclusion to direct payments by tenants to the public utility is required to "specify the amount of rent decrease reflecting the *adjusted* value of the service previously supplied by landlord" (emphasis supplied) and, in addition, the landlord is now required to submit an affidavit stating that the building has been rewired in accordance with Administrator's Interpretation No. 1, that he will pay, or has paid the costs attendant to the installation of meters and the transfer of service on a metered basis from the public utility to the tenants and that he consents to the reduction of the maximum legal rents in accordance with the new Interpretation No. 7. With these relevant general observations in mind, we will now consider each appeal.

## MATTER OF TALEFF REALTY CORP. v JOY

The petitioner landlord on April 3, 1974 filed an application with the Office of Rent Control to discontinue unmetered-unlimited electricity included in the maximum rent of its

tenants at No. 8300 Talbot Street, Kew Gardens, Queens, New York. The tenants opposed. As a consequence of the rent office's freeze on the processing of such applications, necessitated by the obsolescence of the rent decrease schedule under the 1968 revised Interpretation No. 7 due to the sharp rise in the cost of electricity, the landlord on June 26, 1974, initiated an article 78 proceeding. This mandamus proceeding resulted in an order by Special Term, Supreme Court, Queens County, directing the administrative agency to commence processing the landlord's application. Appeal by the Rent Control Commissioner stayed all proceedings (CPLR 5519, subd [a], par 1) and the landlord moved in February, 1975 to have the appeal dismissed for failure to perfect same. It was agreed that the appeal was rendered academic by virtue of the determination in *Parkview Holding Corp. v Starr* (47 AD2d 639 [2d Dept., 1975]) wherein final judgment was granted to certain landlords directing the administrative agency to render a determination on their applications within 30 days after entry of an order to be made thereon. The Second Department, aware that the New York City Office of Rent Control had set up a revised schedule of decreases but was further delaying processing for the avowed purpose of obtaining approval of the State Rent Commissioner of said schedule, observed that "[a]dministrative officials may not refuse to make whatever determination they consider appropriate on plaintiffs' applications within a reasonable time" *(Parkview Holding Corp. v Starr, supra)*. On April 2, 1975, the District Rent Director issued an order granting Taleff Realty Corp.'s application for permission to terminate electric current as a service included in the maximum rents. Rent decreases were calculated in accordance with the revised rent decrease schedule. On August 25, 1975, the city rent commissioner denied petitioner landlord's protest and petitioner instituted the instant article 78 proceeding to review the administrative determination, alleging deliberate delay on the part of the Office of Rent Control. Petitioner contends that such delay mandates imposition of the rent decrease schedule under Interpretation No. 7 (revised Dec. 27, 1968) in existence at the time of the initiation of its application. Respondent commissioner of the Office of Rent Control cites the general rule that the regulation in effect at the time of determination governs and that a landlord has no vested interest in the continuation of a regulation.

In *Matter of Parkchester Apts. Co. v Lefkowitz* (51 AD2d

277 [1st Dept., 1976]), this court recognized the principle underlying *Matter of Our Lady of Good Counsel v Ball* (45 AD2d 66, affd 38 NY2d 780) to the effect that neither willful nor negligent delay of an administrative body during which the underlying regulatory statute was amended would prevent applying pre-existing law. The circumstances giving rise to this salutary rule involved situations of discrimination being effected upon a particular party which served to work a clear inequity or injustice.

Of paramount significance in the case at bar is the fact that petitioner has not been the subject of selective discrimination. The delay was deliberate in the sense that it was pursuant to a system-wide moratorium on the processing of rental decreases based on a switch-over to metered electric service direct to tenants. The moratorium, according to respondent, was in effect while research was being conducted regarding the question of the rental value of the service involved. It is beyond cavil that the updating of the value of electric service is within the spirit of Administrator's Interpretation No. 7 as revised December 27, 1968. Although that interpretation in contemplating rent reductions in an "amount which will reflect the present rental value of the service previously supplied" by the landlord, directed the reader's attention to an accompanying schedule of rent decreases, the amounts set forth in such schedule could well be questioned in 1972, 1973 and 1974 when spiraling inflation and an oil embargo dramatically increased electric rates. Parenthetically, if the cost of electricity had dramatically declined during the same period and the rent laws had reflected such decline in diminishing maximum rents in the interim, it may well be assumed that the landlords would have been the first to claim that the prior schedule of decreases was unrealistically high, in comparison to the date when the reasonable rental value of electric service must be ascertained. Even under these assumed circumstances, a landlord might apply for the switch-over to obtain the benefit of no longer paying the electric bill of a tenant who unreasonably consumes electricity. Thus, it was reasonable for the rent commissioner to promulgate a new schedule. In this context, the cause of the delay in processing does not partake of that particularized discrimination or arbitrary nonrational exercise of power productive of injustice and inequity which warrants judicial censure. Of further significance, there was no change in the basic rules promul-

gated by the rent commissioner under the interpretations. Landlords have not been forestalled in obtaining the benefit of a switch-over in that they will not be saddled with those tenants who might greedily consume electricity because the landlord was paying for same. To apply the 1968 rent reduction schedule where that schedule is unrealistically low would result in a windfall to landlords at the tenants' expense. Viewing the rent commissioner in the role of a mediator weighing the views and contentions of landlords and tenants, it cannot be said that the administrative action undertaken herein in delaying process of the application so that the rent decrease schedule could be appropriately revised to reflect the current economic realities was without rational foundation. The power to delay or suspend processing is inherent in the city rent agency, subject, of course, to judicial review as to whether or not the exercise of such power under particular circumstances had a legal and rational basis.

Petitioner, recognizing that it does not have a vested interest in Administrator's Interpretation No. 7 as revised in 1968 so as to entitle it to keep the rule unchanged (*I.L.F.Y. Co. v City Rent and Rehabilitation Administration,* 11 NY2d 480, 490-491), claims reliance on the pre-existing rent reduction schedule as it existed in 1968. This claim is illusory. In the interim, landlords have received increases in the electric inclusion factor reflected in increased rentals charged to the tenants. Essentially, the revised rent decrease schedule substitutes new rates more commensurate with those increases and in so doing attempts to effect greater equity between the landlords and the tenants where switch-over occurs. Clearly, the rent decrease schedule referred to in the Administrator's Interpretation No. 7 revised in 1968 was reflective of the present rental value of service previously supplied by the landlord at that time, i.e., 1968. The extraordinary change in economic conditions relative to that service in the intervening years mandates that the schedule be updated to reflect the real present economic rental value of the service being supplied by the landlord prior to the switch-over. This is what the rent commissioner sought to accomplish and the system-wide freeze on the processing of switch-over applications had its genesis in this salutary endeavor.

The judgment of the Supreme Court, New York County (GELLINOFF, J.), entered September 2, 1976, should be reversed

on the law, without costs and disbursements; the application should be denied and the petition dismissed.

## MATTER OF SEVEN PARK ASSOC. V JOY

In May of 1971, Park Hill Apts. Corp. as landlord filed an application with the Office of Rent Control to discontinue unmetered-unlimited electricity included in the maximum rent of its tenants at No. 7 Park Avenue, New York, New York. This application was *granted* by orders of the district rent director issued March 27, 1972, permitting the switchover and providing for decreases in the maximum rents according to the formula set forth in Administrator's Interpretation No. 7 (revised Dec. 27, 1968) effective as of the date the decrease in service occurs. The tenants filed a protest seeking administrative review of these orders which culminated in an order of the city rent commissioner issued on May 1, 1973, denying the tenants' protest. In his opinion denying the protest, the rent commissioner declared in pertinent part: "The record disclosed that the subject premises was adequately rewired in 1966 in accordance with the requirements of Administrator's Interpretation No. 1. As a result thereof orders (2 AC 151145) were issued on March 24, 1966 increasing the maximum rents of controlled apartments in the subject building. It is the policy of this Office to encourage the preservation of the City's existing housing supply. The rewiring of a building has been uniformly held to be a major capital improvement. In order to foster such improvements it has been deemed appropriate to permit the change from rent inclusion of electricity to direct payment by tenants to a utility where the rewiring of the entire structure is either contemplated or has been completed in accordance with the provisions of Administrator's Interpretation No. 1. This policy, which has been in effect for approximately a decade, is reflected in Administrator's Interpretation No. 7 (revised December 27, 1968). Said interpretation contains a Rent Decrease Schedule to be applied where permission is granted to eliminate the service of electrical inclusion * * * Based upon the entire evidence of record the Commissioner finds that the District Rent Director properly granted the landlord's application for permission to eliminate the service of electrical inclusion; that the decreases in maximum rents allowed were properly computed in accordance with the Rent Decrease Schedule contained in Administrator's Interpretation No. 7;

and that, accordingly, the orders of the District Rent Director are proper and should be affirmed."

As a consequence, the landlord, Park Hill, completed the switch-over by the installation of individual meters accompanied by the rent reductions prescribed in the orders of March 27, 1972 and the direct billing to tenants by the Consolidated Edison Company as of July 1, 1973. The tenants then commenced an article 78 proceeding seeking judicial review of the determination of the district rent director as affirmed on protest. The landlord was not named as a party to such proceeding. While the proceeding was pending, the Arab oil embargo occurred. The proceeding terminated in an order of Special Term entered December 6, 1973, remanding the matter to the respondent city rent commissioner for further consideration, which order was based on the *consent* to such remission given by the petitioners (tenants) and the respondent. On December 7, 1973, the beneficial interest in the real property at issue was sold under a pre-existing contract to the petitioner herein, Seven Park Associates. Seven Park, as part of the transaction, apparently reimbursed Park Hill some $35,000 for switch-over cost (the installation of individual meters). Finally, on September 9, 1975, some 22 months after the remand, the city rent commissioner issued an order further remanding the tenants' protest to the district rent director with a direction to calculate and order decreases in rent under the revised rent decrease schedule promulgated under the new Interpretation No. 7 revised on March 21, 1975. Petitioner instituted the instant article 78 proceeding to obtain judicial review and the setting aside of the September, 1975 protest determination of the respondent. Respondent moved to dismiss the petition on the ground that the protest order was not a final order.

Initially, it is noted that the September, 1975 protest order contains ministerial directions to the district director to calculate the rental decreases in accordance with the revised rent decrease schedule as applied to each particular tenant "which rent decreases shall be effective as of the date of the actual change-over from rent inclusion to direct electric service * * * to the various tenants". In effect, the respondent applied the new March, 1975 revised rent decrease schedule retroactively to the March, 1972 orders of the district rent director. As such, the order is clearly final and the petition was appropriately entertained. The detailed chronology enunciated above

evinces discriminatory conduct embraceable within the rationale of *Matter of Parkchester Apts. Co. v Lefkowitz* (51 AD2d 277, *supra)* and *Matter of Our Lady of Good Counsel v Ball* (45 AD2d 66, affd 38 NY2d 780, *supra).* Unlike the circumstances in the Taleff Realty Corp. and Amsterdam-Manhattan Associates appeals, here the landlord's application had already resulted in an administrative determination approving the switch-over and rent reduction in accordance with the then applicable rent reduction schedule. Indeed, this determination was upheld on administrative review. In addition, the rent commissioner does not controvert the assertion by Seven Park Associates that the MBR electric override referred to as the "Maximum Base Rent (MBR) 'Add On'" was eliminated by the latter in the filing of appropriate forms with the agency's district director at the time of the switch-over, which circumstance serves to further distinguish this matter from the other companion appeals. Nevertheless, in the context of the tenants' securing judicial review in their article 78 proceeding, the city rent commissioner at or about the advent of the oil embargo alluded to above, consented to a remand, the purpose of which is now self-evident, namely, the purported application of a subsequently revised rent decrease schedule to this landlord. These actions on the part of the respondent partake of a particularized discriminatory act directed at a particular landlord because of the special circumstances present. It is beyond cavil that the administrative determination of the district rent director sustained originally on the tenants' protest by the rent commissioner was rendered prior to the system-wide freeze on the processing of · applications for switch-over. The respondent's consent to the remand and his subsequent conduct demonstrate such deliberate delay as warrants judicial censure.

Accordingly, the judgment of the Supreme Court, New York County (GELLINOFF, J.), entered on June 9, 1976, annulling the administrative order of September 9, 1975 and denying on the merits the respondent's cross motion to dismiss the proceeding as premature and granting the petition in all respects should be affirmed, without costs and disbursements.

### MATTER OF AMSTERDAM-MANHATTAN ASSOC. v JOY

On April 1, 1973, the landlord contracted to rewire its property at No. 175 West 73rd Street, New York, New York and on January 9, 1974, filed an application with the district

rent director to discontinue unmetered-unlimited electric service included in the tenants' maximum rents. The tenants opposed, contending that the proposed rent decreases were dictated by the unrealistic schedule of decreases in Interpretation No. 7 (revised in 1968). Inaction on respondent's part prompted the landlord to initiate a mandamus proceeding which was denied on December 13, 1974 on the office of rent control's defense that the delay had been occasioned by the failure of the State Housing Commissioner to approve a revised rate schedule. The denial of the landlord's mandamus application was without prejudice to renewal on notice to the State Housing Commissioner. After that official's subsequent prompt approval, the revised schedule was adopted as part of the new administrator's Interpretation No. 7 on March 26, 1975. On April 3, 1975, the district director issued orders granting the landlord's application for switch-over, decreasing the maximum rents in accordance with the revised rent decrease schedule and eliminating MBR increases for electric inclusion. The landlord protested the use of the revised schedule, averring that the delay in processing was occasioned by the respondent's endeavor to prepare and adopt the revision. This protest was denied by the city rent commissioner on September 10, 1975 with the declaration that "(i)n the opinion of the Commissioner it was appropriate for the District Rent Director to compute the reductions in the subject maximum rents in accordance with the schedule set forth in the revised Administrator's Interpretation No. 7 as it existed at the time of the issuance of the District Rent Director's orders rather than as it existed as of the date of the filing of the landlord's applications. The Commissioner is further of the opinion that it was proper for the District Rent Director to reserve decision on the landlord's application while research was being conducted regarding the question of the rental value of the service involved. It was also proper for the District Rent Director to apply the rental value of the electric service involved at the time of the issuance of his orders to determine the appropriate decreases in rent."

In light of the general observations set forth herein and the extended analysis of the issues in *Matter of Taleff Realty Corp. v Joy* delineated above, it is concluded that the administrative determination must be sustained. The absence of selective discrimination in the nonprocessing stage while the 1968 rent decrease schedule was being revised and the propriety of

the rent commissioner's action in adopting such revised schedule having been sustained, the consequent application of said schedule by the district rent director to this landlord's application is proper. Indeed, in *Matter of Cohen v Joy* (NYLJ, Feb. 25, 1976, p 6, col 2) in somewhat analogous circumstances, Special Term aptly observed that the rent commissioner appears "to have made a rational and practical application of Revised Interpretation No. 7 by applying current rent decrease schedules" to an application initiated under the 1968 Interpretation. We have concurrently determined the companion appeal in that case by affirming on the opinion of Special Term (54 AD2d 846).

The judgment of the Supreme Court, New York County (GELLINOFF, J.), entered June 9, 1976, should be reversed on the law, without costs and disbursements; the application should be denied and the petition dismissed.

MURPHY, J. P., BIRNS, CAPOZZOLI and LANE, JJ., concur.

Judgment, Supreme Court, New York County, in the first-entitled proceeding entered on September 2, 1976, unanimously reversed, on the law, without costs and without disbursements, the judgment vacated, the application denied and the petition dismissed.

Judgment, Supreme Court, New York County, in the second-entitled proceeding entered on June 9, 1976, unanimously affirmed, without costs and without disbursements.

Judgment, Supreme Court, New York County, in the third-entitled proceeding entered on June 9, 1976, unanimously reversed, on the law, without costs and without disbursements, the judgment vacated, the application denied and the petition dismissed.