OPINION OF THE COURT
Debra J. Kiedaisch, J.
The petitioner mother brought a petition against respondent for support of the child born to petitioner out of wedlock on September 7, 1995. The petition alleges, inter alia, that pursuant to Public Health Law § 4135-b respondent acknowledged paternity of the child in a written acknowledgment dated September 11,1995. A copy of the front side of the acknowledgment is annexed to the petition. The face of the acknowledgment indicates the signatures of both parties were duly notarized and that a copy of the acknowledgment was recorded with the registrar of the City of Middletown.
The support petition was returnable before the Hearing Examiner on January 27, 1998. On the return of the petition respondent, appearing with counsel, sought to contest paternity. The Hearing Examiner granted respondent’s request for an order directing that the parties and child submit to HLA/ DNA blood generic grouping tests to determine the paternity of the child. Subsequent thereto the mother obtained legal repre *575 sentation and by order to show cause returnable before the undersigned on March 6, 1998 sought to vacate the Hearing Examiner’s order for HLA testing. This court granted a temporary stay of the HLA testing.
The motion before the court is now fully submitted with the filing of respondent’s opposition papers and a reply memorandum filed by the petitioner mother.
In his papers respondent does not challenge the authenticity of the acknowledgment of paternity but, essentially, seeks to vacate the acknowledgment on the basis that for periods of time before, during, and after signing the acknowledgment he was overworked, under great emotional distress because of the terminal illness of his wife, depressed by her death, that he was defrauded into signing the acknowledgment, and that he did not read the acknowledgment when he signed it.
There are two statutes, Social Services Law § 111-k and Public Health Law § 4135-b, which set forth the procedures for the voluntary execution of an acknowledgment of paternity. Under Social Services Law § 111-k the acknowledgment is executed under the supervision of a social services official. Under Public Health Law § 4135-b the acknowledgment is executed on papers furnished by a hospital immediately preceding or following the in-hospital birth of a child to an unmarried woman. The statute which is relevant to this case is the Public Health Law statute as the affidavits of the parties disclose they executed the acknowledgment at the hospital four days after the birth of the child. There is no allegation that any social services official was involved in supervising the execution of the acknowledgment.
Public Health Law § 4135-b was amended. The amendment became effective on November 11, 1997, 90 days after its enactment (L 1997, ch 398, § 149 [c]). The amendment changed, among other things, the procedures for advising the signatories of their rights. The amendment requires oral as well as written advisements where the original required only written advisements and opportunity to speak to hospital staff to obtain clarifying information. The amendment also changed the time period in which a signatory could seek to rescind the acknowledgment. Under the Public Health Law as it existed when the acknowledgment was signed the parties had one year from the date of signing to bring a motion to be relieved from the legal effects of the acknowledgment. Under the amended law the signatories have 60 days in which to seek rescission from the earlier of the signing of the acknowledgment or the date of an *576 administrative or judicial proceeding relating to the child in which either signatory is a party. Under the amended law, after the 60-day period either party may challenge the acknowledgment in court only on the basis of fraud, duress, or material mistake of fact. At the time the statute was amended approximately two years had passed from the date the parties signed the acknowledgment.
The first question which must be addressed is whether the November 11, 1997 amendment to the statute has any effect upon the rights and obligations of the parties arising from their execution of the acknowledgment on September 11, 1995.
It does not appear that it was the intention of the Legislature that the amendment is to be applied retroactively to undo any jural rights and obligations with respect to paternity which may have matured and become vested under the operation of the statute as it existed prior to the amendment. The legislative findings which accompanied the 1997 amendment state it is essential that the State’s child support enforcement program meet the needs of children including providing for the timely and efficient establishment of paternity and child support orders (L 1997, ch 398, § 1). Thus, while the amendment may have included changes to further safeguard the legal rights of persons making acknowledgment of paternity, the primary intent of the amended law is to promote the timely and efficient establishment of paternity and child support orders. In Matter of Meegan S. v Donald T. (64 NY2d 751), the Court retroactively applied an amendment to Family Court Act § 517 (a) which enlarged the Statute of Limitations for bringing a paternity proceeding. As noted, the purpose of Public Health Law § 4135-b is to promote the timely and efficient establishment of paternity and child support orders. It is consistent with the holding in Matter of Meegan S. v Donald T. (supra), which facilitated the bringing of paternity petitions by retroactively applying a more generous Statute of Limitations, that the amendment to Public Health Law § 4135-b not be applied retroactively to undo the finality of the establishment of paternity based on the execution of the acknowledgment where the one-year period had already run. The application of the one-year period would apply equally to protect respondent’s claim to paternity by operation of the acknowledgment if it was petitioner who was seeking to vacate the acknowledgment instead of respondent.
In the case of Matter of Cady v County of Broome (87 AD2d 964, 964-965, lv denied 57 NY2d 602), the Court held: “Legisla *577 tion is generally construed as prospective only unless the language of the statute, either expressly or by necessary implication, requires retroactive application (Matter of Parkchester Apts. Co. v Lefkowitz, 51 AD2d 277, 281, affd 41 NY2d 987). There is an exception to this general rule for remedial statutes, which can be given retrospective application to the extent that it does not impair vested rights (Cook v City of Binghamton, 67 AD2d 469, 471, 472, mod on other grounds 48 NY2d 323). ‘Remedial statutes are those “designed to correct imperfections in prior law, by generally giving relief to the aggrieved party’ ’ (Coffman v Coffman, 60 AD2d 181, 188). While this exception does not apply to statutes creating new rights and remedies where none previously existed (Jacobus v Colgate, 217 NY 235), where, as here, the amendment is enacted to rectify an inequity by extending existing benefits to a class of persons arbitrarily denied those benefits by the original legislation, the amendment is remedial and should be applied retrospectively (Matter of Busch v Austin Co., 37 AD2d 648). We also note that chapter 727 of the Laws of 1980 was made effective immediately, rather than having a postponed effective date which would have furnished ‘critical and clear indicia of [legislative] intent’ that the statute was to have prospective effect only (Matter of Deutsch v Catherwood, 31 NY2d 487).”
As noted, the amendment to Public Health Law § 4135-b had a postponed effective date of 90 days indicating legislative intent that the amendment was to have prospective effect. The amendment also was not concerned with extending existing benefits to any class of persons arbitrarily denied those benefits by the original legislation. To apply the amendment retroactively would impair the vested rights of the child, as well as petitioner and respondent, resulting from the acknowledgment of paternity.
Accordingly, in this proceeding, the one-year period of limitations to move for judicial relief from the acknowledgment shall apply as was set forth in Public Health Law § 4135-b at the time the acknowledgment was executed. Unless there exists some reason for extending or tolling the running of the one-year period, respondent is time barred from seeking to rescind the acknowledgment.
In June 1993 respondent’s wife died after a two-year bout with brain cancer. Respondent had a child with her in 1991. Respondent stated he was constantly nervous and distressed, and became depressed, over his wife’s illness and death. Respondent acknowledges that he and petitioner had a sexual re *578 lationship, which he described as sporadic and limited, commencing in December 1994. Respondent states that almost immediately after their sexual relationship began petitioner told him he was the father of the subject child of this proceeding. Respondent states he was in no psychological condition to dispute petitioner’s assertions. From December 1994 through April 1995 petitioner continued to tell respondent that he was responsible for the unborn child. In May 1995, petitioner moved in with respondent. In July 1995, petitioner moved out. Respondent states that contributing to the couple’s inability to reside together were their different philosophies concerning the disciplining of each other’s children from prior relationships. Respondent states he understood the relationship with petitioner to be then over. In September 1995 the subject child of this proceeding was born. Respondent states petitioner summoned respondent to the hospital four days after the child was born and allegedly told him that the hospital would not release the child unless respondent signed what she called “Birth certified papers.” Respondent states he signed the papers without reading them. Respondent alleges no one advised him the papers had any legal significance. Respondent voluntarily paid $50 a week child support to petitioner after the child was born. Respondent alleges that petitioner has allowed respondent some visitation with the child but not to the extent respondent has desired. Respondent alleges that petitioner assured him the child was his but he had “nagging doubts” about that although he continued to pay support. In December 1997, petitioner demanded greater child support and commenced the support petition.
Respondent states that he now believes he was not intimate with petitioner at the time the child was conceived and that he requests the HLA test to quiet the doubts in his mind.
Unless otherwise stated, the following references to Public Health Law § 4135-b are to the statute as it existed when the acknowledgment was signed on September 11, 1995. Public Health Law § 4135-b (1) (a) provides that immediately preceding or following the in-hospital birth of a child to an unmarried woman the person in charge of the hospital, or the designated representative of such person, shall provide to the mother and putative father the documents and written instructions for them to complete a notarized acknowledgment of paternity which if signed by the parties shall be filed with the registrar. Public Health Law § 4135-b (2) (b) provides that where a child’s paternity has not been acknowledged pursuant to the above- *579 noted subdivision (1) (a), the child’s mother and father may voluntarily acknowledge a child’s paternity by signing the acknowledgment of paternity. In this case, while it is not clear from the papers that a representative of the hospital directly furnished the acknowledgment to respondent, the papers make it clear that the parties signed the acknowledgment at the hospital within days of the birth of the child.
Public Health Law § 4135-b (1) (a) provides that the acknowledgment shall be executed on a form developed in consultation with the Commissioner of Social Services. The form shall provide and contain in plain language certain information and statements, including the putative father’s acknowledgment of paternity, and the mother’s statement consenting to the acknowledgment of paternity and that he is the only possible father. The form is to also contain the admonition that signing the acknowledgment shall have the same force and effect as an order of filiation entered after a court hearing including an obligation to provide support for the child. There was no requirement under the statute that the signatories be orally advised of their rights, only that opportunity be provided to speak to hospital staff to obtain clarifying information. A review of the copy of the acknowledgment annexed to the petition shows that it appears to be the official form, contains essentially all of the aforementioned required information, and was accepted for filing by the registrar of the City of Middle-town.
In any event, respondent’s papers do not raise any issue as to the validity or form of the acknowledgment, itself, or that respondent was denied access to staff to have any questions answered. Respondent’s challenge is based upon his assertions that his mental state at and about the time he signed the acknowledgment vitiates the signing of the acknowledgment and permits him to contest paternity.
The statute provides that the acknowledgment once signed stands as having the same force and effect as an order of paternity rendered by a court of competent jurisdiction. (Public Health Law § 4135-b [1] [a]; [2] [b]; [3] [a].) The statute prescribes a one-year period from the date of signing the acknowledgment in which a party may move in Family Court for relief from the acknowledgment. (Public Health Law § 4135-b [1] [a]; [2] [b].) Respondent signed the acknowledgment on September 11, 1995. Respondent’s wife had died almost two years prior to the signing. A period of more than two years has elapsed from the signing to the date in which respondent chai *580 lenged the acknowledgment at the January 27, 1998 support hearing. Respondent’s defense against the enforceability of the acknowledgment, essentially, is that he was emotionally disabled by his wife’s death when he signed it, as well as for a period before and after he signed it. The one-year limitation period in the statute appears to operate as a Statute of Limitations in which an application for relief from the acknowledgment must be brought unless excused or extended for some acceptable reason in law. CPLR 208, in general, provides for the tolling of applicable Statutes of Limitations based on “insanity” or infancy. As various cases have applied the term, “insanity” includes psychological conditions not necessarily equating to mental illness. Nevertheless, the toll under “insanity’ is meant to extend only to those individuals who are unable to protect their legal rights because of an over-all inability to function in society (see, McCarthy v Volkswagen of Am., 55 NY2d 543, 548; Matter of Cerami v City of Rochester School Dist., 82 NY2d 809, 812). The cases further state that the tolling provisions should not readily be given an expansive interpretation and are to be narrowly interpreted to avoid inappropriately expanding the classes of persons able to assert the toll (Eisenbach v Metropolitan Transp. Auth., 62 NY2d 973, 975; Stalker v Luria, 217 AD2d 294).
Respondent’s papers show that during the period in question he was paying child support and raising his child by his deceased wife. The parties moved in together but chose not to continue living together. All indications are that respondent was functioning in society. Respondent offers no medical evidence or proof that he was ever hospitalized or treated for any mental disorder or illness during the relevant period. That he may have remained depressed or saddened concerning his wife’s death does not amount to a showing that he was unable to protect or safeguard his legal rights because of an over-all inability to function in society (see, Matter of Cerami v City of Rochester School Dist., 82 NY2d 809, supra). The court finds respondent has not presented sufficient evidence demonstrating, prima facie, an over-all inability to function in society and an inability to protect his rights which would have tolled the running of the one-year period. The evidence is insufficient to warrant a hearing on the issue. (Haydock v Haydock, 237 AD2d 748; Matter of Ackerman v Hourigan, 217 AD2d 881.)
As noted, respondent also alleges that petitioner told him the hospital would not release the child unless he signed the document. Respondent alleges he did so without reading it. As-
*581 suming the truthfulness of these allegations for purposes of this motion, that such statement was made and was fraudulent, the facts and circumstances still do not establish a prima facie defense based on fraud sufficient to rescind the acknowledgment or warrant a hearing on the issue. At no place does respondent state that he actually believed and relied on the statement that the hospital would not release the child to the mother if he did not sign. Respondent also offers no valid excuse for not reading what he was signing. He says, “I simply signed where I was told to sign and didn’t even read what was put in front of me.” It is well settled that a party who signs a document is bound by its terms, even if he failed to read the document, without any valid excuse for having failed to do so (see, Gillman v Chase Manhattan Bank, 73 NY2d 1; Romero v Khanijou, 212 AD2d 769; Lavi v Hamedani, 234 AD2d 428). If respondent had read and been aware of what he was signing he could have exercised his right within the year to move to rescind it. Public Health Law § 4135-b requires that the acknowledgment contain information concerning the nature of the document, the rights being waived, and the ramifications entailed in signing the acknowledgment in terms of legally fixing paternity and support obligations. Such information was set forth in the face sheet of the acknowledgment. It would be contrary to the statutory scheme and the public policy behind the statute to permit a party to escape the consequences of the acknowledgment by simply saying he failed to read what he was signing in the absence of a convincing excuse for not doing so. Furthermore, respondent’s affidavit indicates that since the birth of the child, a period greater than two years, respondent has maintained contact with the child and voluntarily financially supported the child. In his affidavit respondent complains that the two days per week visitation with the child which the mother has allowed him since May 1996 is not sufficient. Respondent could have challenged the acknowledgment based on the alleged fraudulent statements made by petitioner at the hospital at any time. Instead, respondent waited more than two years to challenge paternity and has done so only in response to a petition for greater child support. By his conduct respondent is equitably estopped from contesting paternity and seeking to compel an HLA blood-grouping test (Matter of Baby Boy C., 84 NY2d 91, 102, n; Fung v Fung, 238 AD2d 375; Matter of Lorie F. v Raymond F., 239 AD2d 659; David L. v Cindy Pearl L., 208 AD2d 502). The allegations in respondent’s affidavit as to what was said to him by petitioner at the time of *582 the signing of the acknowledgment when balanced against the passage of time and respondent’s conduct in acting as parent to the child are insufficient to warrant a hearing.
Accordingly, the motion seeking to vacate the Hearing Examiner’s order for the conducting of HLAZDNA blood generic grouping tests is granted and the administering of such tests to the parties and child concerning the paternity of the subject child is permanently stayed. The support petition is remitted to the Hearing Examiner for a determination of respondent’s child support obligation.