■ In the Matter of PARKVIEW HOLDING CORP. et al., Appellants, v DANIEL W. JOY, as Commissioner of the Office of Rent Control of the City of New York, Respondent.—In a proceeding pursuant to CPLR article 78, *inter alia,* to compel the Commissioner of the Office of Rent Control, in approving petitioners' applications for conversion of their apartment units to individual electric meters, to apply a rent reduction schedule promulgated in 1968, petitioners appeal from a judgment of the Supreme Court, Queens County, dated September 14, 1976, which denied the application and dismissed the proceeding. Judgment reversed, on the law, with one bill of $50 costs and disbursements payable to petitioners by respondent, and proceeding remanded to Special Term for a hearing and new determination in accordance herewith. In November, 1973 petitioners, owners of an apartment building complex, filed applications with the Office of Rent Control to transfer electrical service from a rent inclusion basis to a direct payment basis upon a rent reduction schedule (pursuant to administrator's Interpretation No. 7, as revised on Dec. 27, 1968). The petitioners proceeded with the necessary electrical work and expended $80,000 to complete the rewiring. While the electrical work was being done, petitioners, on January 25, 1974, notified the district rent office that Con Edison would not install the individual meters until petitioners' applications for conversion were approved by that office. On January 30, 1974 the district rent office responded that the conversion could proceed if done in accordance with administrator's Interpretation No. 7, which permits conversion where the buildings have been rewired to conform to the administrator's regulations. There is no claim that petitioners' buildings were inadequately wired. At the same time that the district rent office indicated to petitioners that they could proceed with the conversion based upon Interpretation No. 7, the district rent office notified the tenants of the proposed change. The tenants opposed the change, contending that the proposed rent decreases were based upon an outdated rent reduction schedule which was appended to Interpretation No. 7. Having received little or no encouragement from the district rent office that their complaints would be taken seriously, the tenants, on March 13, 1974, commenced an action to enjoin petitioners from proceeding with the conversion. The tenants asserted that the 1968 rent reduction schedule, on which the changeover would be conditioned, was not only outdated but that application of the 1968 schedule was inconsistent with Interpretation No. 7, which provided that any reduction "will reflect the present rental value of service previously supplied by him [the landlord] and is appropriate in accordance with the [1968] schedule hereinafter set forth." On March 25, 1974 there was a meeting between petitioners, the tenants and respondent. Respondent informed the parties that petitioners' applications would not be acted upon until new regulations were promulgated. Notwithstanding the fact that this was the first indication petitioners received that their applications would not be acted upon either in accordance with Interpretation No. 7, or within a reasonable time, petitioners, on April 15, 1974, entered into a stipulation which provided that they would await a determination on their applications by the district rent office before switching to individual metering. By this time petitioners had already completed the necessary electrical

work at a cost of $80,000; Con Edison subsequently installed the individual meters. On June 10, 1974, two months after agreeing to wait for the district rent office to act upon their applications, petitioners commenced an action to restrain respondent from revising the rent reduction schedule as it applied to them and to compel respondent to issue an order based upon the 1968 schedule. On September 4, 1974 Special Term dismissed the complaint. Petitioners appealed to this court. On February 3, 1975 we modified the order of Special Term by directing respondent to render a determination on petitioners' applications within 30 days after entry of our order. We stated (*Parkview Holding Corp. v Starr*, 47 AD2d 639): "Plaintiff landlords' applications to transfer electrical service from a rent inclusion basis to a direct payment basis in accordance with the existing schedule for rent decreases were admittedly filed in November, 1973. The respondent city officials have delayed their determination pending approval by the State Rent Commissioner of a revised schedule of decreases, as mandated by statute (L. 1971, ch. 1012). On the record, a proceeding under article 78 of the CPLR in the nature of mandamus is the appropriate remedy. Administrative officials may not refuse to make whatever determination they consider appropriate on plaintiffs' applications within a reasonable time (cf. *Matter of Island Improvements v. May*, 231 App. Div. 837)." Our decision in *Parkview* was consistent with our prior decision in *Matter of Our Lady of Good Counsel R. C. Church & School v Ball* (45 AD2d 66, affd 38 NY2d 780), a case involving the denial of a pending application because of a statutory change adopted after the application was filed. In *Our Lady*, we stated (p 73): "We hold that where a license would have been granted under the law as it existed at the time the application for the license should have been passed upon, the application will not be subject to the onerous strictures of an amendment of the pertinent statute or regulation, or of a new statute or regulation, and that it matters not whether the application was innocently or deliberately filed and forgotten (see 45 N. Y. Jur., Permits and Licenses, § 20; Ann. 169 A. L. R. 585; *Sgromolo v. City of Asbury Park*, 134 N. J. L. 195; *Rubin v. City of Rockford*, 296 Ill. App. 650)." The holding in *Our Lady* has been followed in *Matter of Vanderbilt 77th Assoc. v Conciliation & Appeals Bd.* (51 AD2d 946, mot for lv to app den 39 NY2d 707), *Matter of Parkchester Apts. Co. v Lefkowitz* (51 AD2d 277) and, most recently, in *Matter of 2 Fifth Ave. Co. v New York City Conciliation & Appeals Bd.* (57 AD2d 106). In *Parkview Holding Corp. v Starr (supra)*, although we concluded, as a matter of law, that respondent's delay in acting upon petitioners' applications was unreasonable, we neither directed respondent to apply the 1968 rent reduction schedule, nor did we enjoin the adoption of a revised schedule. The import of our decision was that petitioners' November, 1973 applications should have been acted upon within a reasonable time. Certainly respondent was required to have acted by June 10, 1974, the date on which petitioners commenced the action. Our decision was intended to correct the wrong which petitioners suffered between November, 1973, the date their applications were submitted, and June 10, 1974, the date on which they first sought judicial relief. Notwithstanding our February 3, 1975 order, petitioners' applications were not acted upon until March 27, 1975, more than 30 days after the entry of our order. Although this delay was not illegal, since respondent had filed a notice of appeal which had the effect of staying our order pursuant to CPLR 5519 (subd [a], par 1), nevertheless, the delay permitted the Office of Rent Control to act upon petitioners' applications pursuant to Interpretation No. 7 as revised on March 21, 1975. The record does not indicate which date or time period the revised rent reduc-

tion schedule was promulgated to reflect. If the schedule was revised to reflect the rental value of the cost of electricity in March, 1975, then reliance upon the revised schedule was clearly inequitable and improper. Our February 3, 1975 order was intended to correct a wrong which was committed between November, 1973 and June, 1974. The delay which resulted because the issue was before the courts should not deprive petitioners of the application of the appropriate rent reduction schedule. "Although mandamus relief is classed as a legal remedy, equitable principles largely control its issuance" *(Matter of Geller v Veteran,* 49 AD2d 574). Since equity regards as done that which should have been done *(Crippen v Spies,* 255 App Div 411, 415; 20 NY Jur, Equity, § 85), respondent cannot now, after a year's delay, apply a rent reduction schedule which reflects the value of services as of March, 1975. Accordingly, the case is remanded to Special Term to determine which date or time period the revised schedule was promulgated to reflect. If the revised schedule is based upon a date subsequent to June, 1974, respondent's March 27, 1975 determination of petitioners' applications should be annulled and respondent should be directed to act upon petitioners' applications pursuant to a rent reduction schedule which reflects the value of the service supplied as of June 10, 1974, the date that petitioners sought judicial relief. If, however, the schedule was revised to reflect the rental value of the cost of electricity between November, 1973 and June, 1974, respondent's determination was proper. It should be noted that respondent was not and would not be required to apply the specific rent reduction schedule appended to Interpretation No. 7 (as revised, 1968). That interpretation explicitly provided that any rent reduction based upon conversion to individual metering "will reflect the present rental value of service previously supplied by him [the landlord] and is appropriate in accordance with the schedule hereinafter set forth." We note that the decision of the Appellate Division, First Department, in *Matter of Amsterdam-Manhattan Assoc. v Joy* (54 AD2d 423), which is contrary to our holding in *Parkview Holding Corp. v Starr* (47 AD2d 639, *supra)* was reversed by the Court of Appeals on June 30, 1977. Martuscello, J. P., Cohalan, Suozzi and Mollen, JJ., concur.