■ In the Matter of FAYMOR DEVELOPMENT Co., INC., Appellant, v BOARD OF STANDARDS AND APPEALS OF THE CITY OF NEW YORK, Respondent. —In a proceeding pursuant to CPLR article 78 to review a determination of the respondent, dated April 15, 1975 and made after a hearing, which "denied" petitioner's appeal from a "stop-work order" issued by the Department of Buildings of the City of New York and to compel respondent to reissue a certain building permit *nunc pro tunc,* petitioner appeals from a judgment of the Supreme Court, Queens County, entered January 16, 1976, which dismissed the proceeding. Judgment reversed, on the law, with costs, determination annulled, and petition granted to the extent that petitioner is granted a period of 103 days in which to complete all work on foundations in order to vest its rights and respondent is directed to reinstate the building permit *nunc pro tunc* for such period. Section 11-331 of the Zoning Resolution of the City of New York provides for the lapse of a permit which is inconsistent with a zoning change, unless all work on the foundations of the structure has been completed prior to the change. On October 10, 1974 the Board of Estimate rezoned a small area, which included the proposed building site, from an R 3-2 to an R 3-1 residential district. The former permitted high-rise residential buildings; the latter permitted only one- or two-family detached or semidetached homes. As of that date, petitioner, the owner of the site, had not completed the foundation work. On December 19, 1972 petitioner was issued a building permit for construction of a seven-story multiple dwelling at the southwest corner of Lanett Avenue and Beach 6th Street, Far Rockaway, Queens, and it was renewed in November, 1973. The building was to occupy 8% of the 170,000 square foot area. Petitioner's uncontested testimony was that it would require a rental of $100 a room. After it was granted the initial permit, petitioner drafted plans and specifications and arranged the necessary financing. On June 3, 1974 and, allegedly, as construction was about to begin, the Department of Buildings (the Department) revoked the permit, contending that inclusion of a mapped but unimproved street violated section 36 of the General City Law. Petitioner appealed to respondent and, on July 23, 1974, the latter directed reinstatement of the permit. The time thus lost by petitioner was 51 days. Petitioner then proceeded with construction. On August 16, 1974, when the driving of piles to lay the foundation was scheduled to begin, residents of the area and others completely surrounded the building site with parked cars and prevented ingress of delivery trucks. It is uncontested that each delivery truck was surrounded and that construction workers were physically threatened. This interruption of construction continued for three days, until August 19, 1974. On that day a neighboring parochial school and certain homeowners in the area instituted an action to enjoin petitioner from proceeding with construction and, in connection with their accompanying motion for a temporary injunction, were granted an ex parte stay. The street demonstrations thereby became unnecessary and they ceased *pro tempore.* The motion for a temporary injunction was granted, with a memorandum decision dated September 3, 1974, on condition that a

$75,000 bond be posted; it provided for the settlement of an order on notice. The court stated, *inter alia,* that "plaintiffs will suffer much more harm if the injunction is denied and they then succeed * * * than the defendant [petitioner herein] would suffer if * * * the defendant should ultimately succeed." Apparently, the change of zoning was not immediately in the offing and the court did not consider that the temporary injunction might prevent the vesting of rights pursuant to section 11-331 of the zoning resolution. By order dated September 13, 1974, the plaintiffs therein were given until September 20 to post a bond; on September 19 this was extended to September 27, a Friday. No bond was posted and the temporary injunction expired on that day. On Monday, September 30, 1974, petitioner completed a full day of work and 25 piles were driven. However, on October 1, 1974 there was again resort to action in the streets and the site was again surrounded by parked cars. On that day, and on October 3, petitioner obtained restraining orders staying all attempts to impede construction. The persons served with the orders tore them up and threw them into the sewer. Demands for protection and law enforcement, made upon the police, traffic department and fire department (the latter because of cars being parked at fire hydrants) were unmet. This street action continued until October 10, 1974, during which time no construction could proceed. On that date further street activity became unnecessary because the area was rezoned to an R 3-1 residential district and, on October 11, 1974, the building permit was revoked. The total number of lost days for construction due to the earlier improper revocation by the Department, the court-ordered stays and the street actions was 103. We hereby grant an allowance of that number of days for petitioner to complete the foundation and thereby secure vested rights (see *Matter of Lefrak Forest Hills Corp. v Galvin,* 40 AD2d 211, affd 32 NY2d 796; *Matter of Temkin v Karagheuzoff,* 34 NY2d 324; *Matter of Bayswater Health Related Facility v Karagheuzoff,* 37 NY2d 408; *Matter of Pokoik v Silsdorf,* 40 NY2d 769; *Matter of Our Lady of Good Counsel R. C. Church & School v Ball,* 45 AD2d 66, 73, affd 38 NY2d 780). No dissertation is necessary to conclude that the rule of law must prevail. The right to proceed pursuant to a valid building permit, no less than any other civil right, is not to be lost because others resort to the streets, or because governmental authorities have improperly placed hurdles barring the appropriate exercise of such right. Martuscello, J.P., Latham, Shapiro and O'Connor, JJ., concur.