OPINION OF THE COURT
 

 Wachtler, J.
 

 Petitioner Faymor Development Co. commenced this article 78 proceeding to annul a determination of the New York City Board of Standards and Appeals which denied petitioner’s application to reinstate a building permit automatically revoked when the property was rezoned. Petitioner claimed that it was prevented from completing construction on its foundations and acquiring vested rights under the permit because of illegal interference by protesting area residents supported by delaying tactics and acquiescence on the part of municipal officers ultimately culminating in the zoning change. The
 
 *563
 
 Supreme Court dismissed the petition but the Appellate Division reversed. The city appeals claiming that the board lacked the power to reinstate the permit on the ground stated and that the courts may not compel the board to do an unauthorized act.
 

 Petitioner is the owner of an undeveloped parcel of land located at Far Rockaway in Queens County. In January, 1972 it applied for a building permit to erect a six-story multiple dwelling with cellar. This was a permitted use under the R3-2 zoning then applicable to the property. On December 19, 1972 the permit was granted. It was renewed on November 1, 1973.
 

 In the summer of 1974 petitioner was prepared to begin construction of the foundation. On June 3, however, the building department revoked the permit when a community planning board raised various "objections and questions”, noting in particular that the building was to be erected over a mapped but undeveloped street in purported violation of section 36 of the General City Law. Petitioner appealed and on July 23 the board reinstated the permit.
 

 Community groups then brought an article 78 proceeding against the board to annul this determination. Hundreds of area residents also proceeded to the work site, surrounded it with parked cars and refused to allow petitioner’s construction crews and equipment to enter on August 16. This continued until August 19 when the area residents brought an action to enjoin petitioner from proceeding with construction and immediately obtained an ex parte stay. This stay and a subsequently granted temporary injunction remained in effect until Friday, September 27, at which time it lapsed due to the failure of the plaintiffs to post a $75,000 bond.
 

 On Monday, September 30, petitioner’s work crews returned to the site and proceeded with the construction without incident. The following day, however, they once again found their way blocked by area residents and parked vehicles completely surrounding the work site. Petitioner’s efforts to enter its property and resume construction on this and subsequent days were unsuccessful. The petitioner twice obtained court orders directing the protesters to cease interfering with construction. The protesters refused to comply. On October 3 petitioner hand delivered a written request to the police department for assistance in gaining access to its property. Petitioner sent similar requests to the traffic department and the fire department to have the vehicles removed. Despite these requests the
 
 *564
 
 protesters and their vehicles remained in place until the board of estimate rezoned the property on October 10. As rezoned the property was placed in the R3-1 category which only permits the construction of one- and two-family homes.
 

 On October 11 the building department informed petitioner that its building permit had been revoked pursuant to section 11-331 of the zoning resolution which provides that a building permit for this type of project automatically lapses on the effective date of a zoning change unless the foundation has been completed.
 
 *
 
 Petitioner appealed to the board noting that it had incurred substantial costs and obligations in excess of $1,380,000 and had been prevented from completing its foundation and obtaining vested rights because of "illegal mob actions by area residents” aided by the actions or "inaction of the city agencies who have the duty and obligation to enforce the law.” Petitioner requested that the board direct the reinstatement of the building permit by either "deeming that the [petitioner] had obtained vested rights, or alternatively, granting the [petitioner] a grace period within which to obtain its vested right.”
 

 The board found that it was "required * * * to support the action of the Building Department”. It noted that petitioner had not in fact completed the foundation and held that this requirement of section 11-331 was mandatory: "The Board has no discretionary power but must strictly apply the provision in the zoning resolution.” The board also stated that it was "not empowered to determine the issue of common-law vested rights nor to grant petitioner a 'grace period’ within which to acquire vested rights.”
 

 Petitioner then commenced this article 78 proceeding seeking an order annulling that determination and directing the board to reissue the permit. The. Supreme Court dismissed the petition holding that the construction completed by petitioner was not sufficient to establish vested rights and that petitioner was not entitled to equitable relief because here, unlike
 
 Matter of Temkin v Karagheuzoff
 
 (34 NY2d 324) and
 
 Matter of Bayswater Health Related Facility v Karagheuzoff
 
 (37 NY2d 408), the city had not actively interfered with construction. The court also held that it could not "be said that the independent action of private citizens, even illegal, is sufficient to give rise to a vested right.”
 

 
 *565
 
 The Appellate Division reversed and directed that the permit be reinstated for 103 days, the "total number of lost days for construction due to the earlier improper revocation by the Department, the court-ordered stays and the street actions” by area residents. The court stated: "[T]he rule of law must prevail. The right to proceed pursuant to a valid building permit, no less than any other civil right, is not to be lost because others resort to the streets, or because governmental authorities have improperly placed hurdles barring the appropriate exercise of such right.” (57 AD2d 928, 929.)
 

 As noted, on this appeal the city relies on the principle that "A public body cannot be commanded in an article 78 proceeding to perform an act not authorized by the statute from which it derived its power”
 
 (Matter of Wong v Finkelstein,
 
 299 NY 205, 207). The city argues that once the property was rezoned, the board, according to the terms of the zoning resolution was only permitted to reinstate the permit if the foundations had been completed and, thus, the Appellate Division should not have directed the board to grant the relief on the other grounds asserted by the petitioner.
 

 A court, however, may estop the city from asserting the landowner’s failure to complete the foundations if, for instance, the city has interrupted construction by illegally suspending the permit
 
 (Matter of Temkin v Karagheuzoff,
 
 34 NY2d 324,
 
 supra; Matter of Bayswater v Karagheuzoff,
 
 37 NY2d 408,
 
 supra).
 
 Similarly a court may deny an agency the benefit of a change in the law when it has intentionally or even negligently delayed action on an application for a permit or license until after the law had been amended to authorize denial of the application
 
 (Matter of Pokoik v Silsdorf,
 
 40 NY2d 769;
 
 Matter of Our Lady of Good Counsel v Ball,
 
 38 NY2d 780, affg 45 AD2d 66). In none of these cases has it been suggested that the board was expressly authorized by statute to issue or reinstate the permit whenever there had been illegal or negligent interference with the petitioner’s right to acquire vested rights. Nor should it be assumed that a court’s equitable power to order the board to grant the relief depended or should depend upon the existence of such statutory authority. A party may be ordered to do equity. When a court is called upon to exercise equitable powers it is not precluded from doing so because the agency involved may not possess similar powers.
 

 The city claims that the case now before us is distinguish
 
 *566
 
 able because here the petitioner’s failure to complete its foundations and acquire vested rights was not due to any "willful or negligent action of officials charged with issuing the permits involved or by illegal change in the building or zoning laws.”
 

 There is, of course, no suggestion that the petitioner was at fault. The city had approved and authorized the construction of the building; it was a lawful use under the law then in effect and, in reliance on the permit, petitioner had apparently incurred considerable financial expense and obligations. It was prepared to begin construction and it had the right to "vest” its interest by constructing the foundations
 
 (Matter of Temkin v Karagheuzoff,
 
 34 NY2d 324, 328,
 
 supra; Matter of Pokoik v Silsdorf,
 
 40 NY2d 769,
 
 supra).
 

 Nevertheless petitioner’s efforts to proceed with construction were delayed, obstructed and ultimately frustrated because of violent opposition from area residents. They commenced dubious, if not frivolous lawsuits and obtained a stay on the condition that they post a bond to cover petitioner’s losses. The bond was never posted. They took to the streets and physically excluded petitioner from its property in disregard of law and court orders to cease interference.
 

 But the city played a part as well. Throughout the period city officials displayed a willingness to appease the protesters at petitioner’s expense. At the outset the building department revoked the permit on technical grounds. The defect, if there was one, had been evident on the face of the plans for over a year and a half and was only acted upon when community opposition to the project was heard (see, e.g.,
 
 Matter of Bayswater v Karagheuzoff,
 
 37 NY2d 408, 415-416,
 
 supra).
 
 Finally, to satisfy the protesters the board of estimate terminated the permit and the petitioner’s rights by zoning out the project. In the interim city police officials stood by while a lawless mob prevented petitioner from vesting its rights under the existing law. A municipality of course can rarely be held liable in damages for failure to provide adequate services
 
 (Riss v City of New York,
 
 22 NY2d 579; see, also,
 
 Schuster v City of New York,
 
 5 NY2d 75). It may, however, be estopped from claiming the benefits of its own inaction, whether intentional or merely negligent
 
 (Matter of Pokoik v Silsdorf, supra; Matter of Our Lady of Good Counsel v Ball, supra).
 

 In sum, as a result of the combined action by area
 
 *567
 
 residents and the action and neglect of public officials, the petitioner was denied all opportunity to proceed with construction as it had a right to do under the permit. In fairness the city cannot now rely on the failure of the petitioner to complete its foundations as a ground for denying reinstatement of the permit
 
 (Matter of Temkin v Karagheuzoff, supra,
 
 p 329;
 
 Matter of Bayswater, supra,
 
 p 416).
 

 Accordingly the order of the Appellate Division should be affirmed.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
 

 Order affirmed, with costs.
 

 *
 

 After the permit was revoked in October of 1974, the article 78 proceeding previously brought by the area residents was dismissed as being moot.