OPINION OF THE COURT
George A. Murphy, J.
This is an action for declaratory judgment wherein the plaintiff Landmark Colony at Oyster Bay seeks, inter alia, a determination that Nassau County Ordinance No. 229-80, enacted May 19, 1980, is unconstitutional, illegal and void. Plaintiff also seeks to recoup from the County of Nassau a $15,000 penalty imposed on December 18, 1980 by the Nassau Planning Commission pursuant to this ordinance and thereupon paid under protest by the plaintiff. Plaintiff contends that the subject matter of the ordinance has been pre-empted by State legislation applicable only to Nassau County and that the ordinance insofar as it is inconsistent with such special legislative enactment, must be held to be void. The defendants, on the other hand, argue that the ordinance is consistent with the State legislation and is a permissible separate exercise of county *24 jurisdiction over land development as authorized in the county charter.
The subject litigation results from the action by the Nassau County Planning Commission on December 18, 1980 in exacting a payment of $15,000 from the plaintiff as a condition to commission approval of plaintiff’s filed map of Landmark Colony at Oyster Bay. The specific authority for the commission’s action, according to the county, is subdivision 2 of Ordinance No. 229-80, which provides as follows: “Whoever, being the owner or agent of the owner of any land located within a subdivision, commences construction of any non-public improvements without the approval of the Nassau County Planning Commission, or transfers, sells, agrees to sell, negotiates, offers or advertises for sale any unit of or interest in land by reference to or exhibition of, or by other use of a plat of a subdivision, before such plat has been approved, as provided in Section 1610 of the County Government Law of Nassau County and Section 334a of the Real Property Law, and filed in the office of the County Clerk, shall forfeit and pay a penalty of five hundred ($500.00) dollars for each unit so constructed and/or each lot, parcel or unit transferred, sold, agreed to be sold, negotiated, offered or advertised for sale to be recovered by the County and paid to the County Treasurer. The description of such lot or parcel by metes and bounds in the instrument of transfer or other document used in the instrument of transfer or other document used in the process of selling or transferring shall not except the transaction from such penalty.”
The evidence on the trial firmly established that the plaintiff did, in fact, advertise for sale, contract to sell and commence construction of a number of units at Landmark Colony at Oyster Bay without the final approval of the commission and prior to the due filing of its map in the office of the county clerk.
Subdivision 13 of section 334-a of the Real Property Law provides as follows: “13. Failure to file said map or maps as required by the provisions of this section, shall subject the owner of such lands shown upon such maps, or of unsold lots or plots thereon, to a penalty to the people of the state of New York of one hundred dollars for each and every lot *25 or plot thereon sold or conveyed by or for such owner prior to the due filing of such map or maps.”
It is the opinion of the court that the aforesaid subdivision 13 of section 334-a of the Real Property Law specifically and entirely addresses the matter of a developer selling or conveying plots or units before or without due filing of his map. It is clear that unless there is either a sale or conveyance of a plot or a unit, there exists no basis on which to exact the $100 penalty per plot or unit allegedly sold or conveyed. The violation of the statute, then, is found not in the failure to file the map, but, rather, is found in the premature sale or conveyance of plots or units. Thus, the court concludes that section 334-a exclusively covers the exaction of a specific fine for such premature sale or conveyance. It is apparent also that the provisions of county Ordinance No. 229-80 conflict with the State’s statutory effort to establish a fair and reasonable standard of punishment for selling or conveying such plots or units prematurely and is therefore void (see People v Blue Ribbon Ice Cream, 1 Misc 2d 453; Matter of Kress & Co. v Department of Health, 283 NY 55).
A reading of the two legislative enactments shows that the words used in Ordinance No. 229-80, to wit: commences construction without approval, transfers, sells, agrees to sell, negotiates, offers or advertises for sale, are really no more than different (as well as redundant) ways of describing the ultimate overt conduct explicitly prohibited in section 334-a. For example, a developer who has negotiated or signed a binding contract for the sale of a plot or unit unquestionably has “sold” that property within a fair interpretation of section 334-a. The effort to expand the violative conduct in this area to include “advertising” is at best innocuous and meaningless surplusage and is probably deficient as too vague to be enforceable. This is best illustrated by the case at bar where the county early on in the history of this matter actually authorized the erection of three “models” on the site. It is well known that the use of models is probably the most common way for a developer to “advertise” what he is “offering” to the buying public.
It appears to the court that the most glaring conflict between Ordinance No. 229-80 and section 334-a is the *26 provision in the county ordinance of a $500 fine for a violation, instead of the $100 fine provided in the State statute. Here, it need only be noted that by chapter 315 of the Laws of 1983, subdivision 13 of section 334-a has been amended so as to provide the $500 penalty that the county ordinance contains. The amendment, however, of the State statute is not effective until January 1, 1984 and it would appear then (to borrow a phrase used in the county brief), that the county by enacting its ordinance has a “watch which must be running fast.”
In its brief on the law, the county states that it relies on both section 1610 of the county charter and section 334-a as its authority for collecting the $500 fine. Section 334-a, in its entirety, permits, however, no more than a $100 fine per illegal plot or unit. Thus, the county obviously has exceeded its right to fine the plaintiff and its action is consequently void. Moreover, there is no authority in the county charter for the county to collect the subject fine other than by a civil action (§ 1610, subd [6]). In this regard, the court notes that an administrative officer or board does not possess the power to impose a penalty in the absence of specific statutory authority to do so (Matter of New Jersey Fid. & Plate Glass Ins. Co. v Van Schaick, 236 App Div 223, affd 261 NY 521). Certainly, the modus operandi utilized on December 18, 1980 had no authority in law and requires restitution to the plaintiff of this large sum extracted at a critical moment, under great pressure of circumstances and without appropriate due process for the plaintiff.
The plaintiff has argued additionally that Ordinance No. 229-80 is unconstitutional as vague. It is well settled that an ordinance will not be set down as unconstitutionally vague merely because there may be some marginal cases where doubts may arise (Matter of Patricia A., 31 NY2d 83; Levitt v Incorporated Vil. of Sands Point, 6 NY2d 269; Flemming v Nestor, 363 US 603, reh den 364 US 854). The unconstitutionality of a statute must be proven beyond a reasonable doubt (Sawyer v Town of Southport, 6 AD2d 553; 20 NY Jur 2d, Constitutional Law, § 80, pp 157-158).
Here, it has already been demonstrated that the verbiage of Ordinance No. 229-80 (except perhaps for the refer *27 ence to advertising), is little more than a different and redundant way of describing a prohibition against selling or conveying prematurely the units or plots on the map and it is, therefore, in that respect, as constitutional as section 334-a of the Real Property Law. Considering the evidence of premature construction and contracts to sell, which evidence the plaintiff has not disputed, it is clear that the plaintiff has failed to demonstrate, at least in this case, that the challenged ordinance is beyond a reasonable doubt unconstitutionally vague as applied to the plaintiff.
The plaintiff asks the court to prevent the county from enforcing its ordinance for the added reason that the county allegedly changed the applicable law at a time when it was in fact involved with plaintiff’s application. The plaintiff contends that, at the time the law was changed and thereafter it was subjected to unreasonable obstacles to a timely completion of its requirements pursuant to applicable rules, regulations and procedures. More particularly, plaintiff indicated that it was originally misled into believing that the county planning commission’s approval was not a factor. Plaintiff has offered proof that the county health department “processing” in mid-1980 was replete with administrative delays. Despite the fact that this department “had only one engineer”, required its personnel to “split our time”, was being “swamped with work”, was in the middle of both vacation and leave time, it insisted unnecessarily on technicalities and assumed an adamant posture in regard to the plaintiff’s application to “start from scratch”. Plaintiff showed that previously, on May 20, 1980, it was given the impression in writing by this department that plaintiff’s plans were “in general conformance to Department requirements”.
We note that Ordinance No. 229-80 actually was ready for forwarding to the board of supervisors for action in April of 1979 (at least a year prior to its actual dispatch and processing); for some reason, it got lost or strayed along the way. There was also evidence that as late as February, 1981, well after the imposition of the $15,000 penalty, there'was a vigorous and very high level ongoing debate as to whether the Town of Oyster Bay or the county planning commission should handle the processing of con *28 dominiums. In addition, exhibits show that there was an acknowledgment at the county level that delays in processing through the county were attributable to at least a half dozen different reasons, a number of which could be laid at the door of both the county and the town. It was similarly demonstrated that confusion reigned regarding the transmittal of documents. Apparently, also, there were instances where developers, caught in the maze of governmental operations were, intentionally or inadvertently, proceeding prematurely with construction. In any event, it can be said that the plaintiff was more a victim of bureaucratic confusion and deficiencies than the perpetrator of an inexcusable violation of a clear-cut or well-promulgated, applicable statute governing its legitimate effort to add an improvement to the housing stock of the county without impinging on public well-being or health or safety. There was evidence presented that, following the year 1980, procedural changes were indeed implemented at the county level and the processing time was speeded up substantially as a result of changes, one of which was the abandonment of the system of sending the map around to different agencies for signatures and another change from the use of both a preliminary and final approval map to just the final map.
Although plaintiff’s handling of its own requirements perhaps left something more to be desired, based on the evidence and without faulting either the plaintiff or the defendants completely, it is a fact that the plaintiff was engaged in an important project at great risk of heavy financial loss if unreasonably delayed. In those circumstances, the county people, in the spirit of partnership with private developers in serving the public, could have better responded to and served this plaintiff and ought not to be permitted to add the $15,000 penalty to the other hardships the plaintiff sustained due to its reliance upon and subjection to the county’s deficient operations and processing. There is little evidence that Ordinance No. 229-80, as a practical matter, was adequately promulgated or implemented or that the county did all it should have done to process plaintiff’s application and to monitor plaintiff’s conduct at the site. Thus, the imposition of the fine at the *29 eleventh hour, in summary fashion, as a condition precedent to approval, was both unfair and improper in addition to being totally illegal as heretofore shown.
The doctrine of equitable estoppel is applicable to municipalities (Matter of Moritz v Board of Educ., 60 AD2d 161; La Porto v Village of Philmont, 39 NY2d 7; Bender v New York City Health & Hosps. Corp., 38 NY2d 662; Planet Constr. Corp. v Board of Educ., 7 NY2d 381; Fallica v Town of Brookhaven, 69 AD2d 579; 1555 Boston Rd. Corp. v Finance Administrator, 61 AD2d 187; Eden v Board of Trustees, 49 AD2d 277, 284). In this light a court may deny a municipal agency the benefit of a change in the law when it has intentionally or even negligently delayed action on an application until after the law has been amended (cf. Matter of Pokoik v Silsdorf, 40 NY2d 769; Matter of Our Lady of Good Counsel v Ball, 38 NY2d 780, affg 45 AD2d 66; Matter of Faymor Dev. Co. v Board of Stds. & Appeals, 45 NY2d 560).
The court finds no merit to the argument that this plaintiff is collaterally estopped from pressing its claim to a return of the penalty. Collateral estoppel is not applicable to a question of law such as is here presented as the essential issue of this case (see Yates v United States, 354 US 298, 336; United States v Moser, 266 US 236, 242; People v De Sisto, 27 Misc 2d 217, 243). Moreover, for the doctrine of collateral estoppel to operate, there must be an identity of issues as well as a full and fair opportunity to contest the issues (Vincent v Thompson, 50 AD2d 211; Schwartz v Public Administrator, 24 NY2d 65, 72). Here, plaintiff was not a party to any prior court proceedings and did not have a full and fair opportunity to contest the issues.
The county presents the argument that the plaintiff’s action for declaratory judgment is time barred. If it is demonstrated that the rights of the parties sought to be stabilized in the declaratory judgment action are, or have been, open to resolution through a form of proceeding for which a specific limitation period is statutorily provided then that period limits the time for the commencement of the declaratory judgment action. Otherwise, the six-year “catch-all” Statute of Limitations set forth in CPLR 213 *30 (subd 1) is applicable (see Solnick v Whalen, 49 NY2d 224; Sears, Roebuck & Co. v Enco Assoc., 43 NY2d 389, 396). Here, a CPLR article 78 proceeding is not an appropriate one to test the validity of Ordinance No. 229-80 adopted by the county board of supervisors in its legislative capacity (Solnick v Whalen, supra; Dun & Bradstreet v City of New York, 276 NY 198, 206; Bank of Yorktown v Boland, 280 NY 673; Matter of Gold v Gartenstein, 54 NY2d 627; Matter of Morgenthau v Erlbaum, 59 NY2d 143).
Finally, the court rejects the defendants’ argument that the plaintiff having paid the fine herein thereby consented to its imposition. As heretofore set forth, the fine was clearly paid and received subject to the plaintiff’s protest.
Based on all of the foregoing, then the court here decides that Ordinance No. 229-80 is void and unenforceable. The county is estopped, moreover, by its conduct, from imposing on plaintiff this unconscionably harsh penalty for a claimed violation of the challenged ordinance (see American Bartenders School v 105 Madison Co., 59 NY2d 716). Consequently, the county is directed to return the sum of $15,000 to plaintiff with interest from December 23, 1980 within 30 days after the service of a copy of the judgment to be entered herein.
The request for attorney’s fees is denied since counsel fees and legal expenses necessarily incurred in carrying out a lawsuit are not generally considered proper items of expense recoverable as general or special damages in the absence of statutory or contractual authorization (City of Buffalo v Clement Co., 28 NY2d 241; Equitable Lbr. Corp. v IPA Land Dev. Corp., 38 NY2d 516).
The plaintiff is awarded costs and disbursements.
The motions upon which the court reserved decision at trial are disposed of as herein indicated.