Peter GOTTLIEB and Jeri
Riggs, Plaintiff,

v.

VILLAGE OF IRVINGTON,
et al., Defendants.

No. 98 Civ. 6969(CM).

United States District Court,
S.D. New York.

Oct. 19, 1999.

Dennis E.A. Lynch, Dorfman, Lynch & Knoebel, Nyack, NY, Richard E. Gottlieb, Lovell, White, Durrant, Chicago, IL, for Peter M. Gottlieb, Jeri Riggs, plaintiffs.

Robert Hermann, Plunkett & Jaffe, P.C., White Plains, NY, for Village of Irvington, defendant.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT

McMAHON, District Judge.

This written decision memorializes an oral decision announced in open Court on September 23, 1999.

In March 1998, Peter Gottlieb and Jeri Riggs, husband and wife, purchased a piece of property in a previously-approved subdivision in the Village of Irvington, New York, with the intention of building their "dream house." They encountered hostility from their immediate neighbors, Barbara Fragomen and the Rancic family. There is no indication in this record that the hostility was motivated by anything other than the neighbors' desire not to have a house built on adjacent property— an all-too-frequent occurrence as the suburbs become more populous and correspondingly denser. The neighbors' opposition notwithstanding, Plaintiffs obtained a building permit from the Building Inspector of the Village of Irvington, based on architectural plans that included a driveway cut located along the border between their land and the Rancics' property. Armed with their permit, they commenced construction.

Over the course of the summer of 1998, the Village issued two stop work orders covering Plaintiffs' premises. The first related to an over-height retaining wall. Plaintiffs altered the design of the wall and the stop work order was promptly rescinded. The second stop work order, issued on August 11, 1998, led to the filing of this lawsuit.

When the subdivision containing plaintiffs' property was approved by the Irvington Planning Board in 1988, it showed particular locations for driveway cuts for

each of the building lots. Plaintiffs' building plans showed the driveway cut at a different location. The second stop work order was issued when the Village's engineer, Ralph Mastromonico, who had platted the original subdivision, called to the Village's attention the fact that the driveway location did not conform to the approved subdivision plat. Viewing the facts most favorably to Plaintiffs, the engineer's attention to this discrepancy occurred only after the Village received more complaints from the neighbors, after an August 10 meeting of Village officials held without notice to either of Plaintiffs, and after the Mayor of Irvington commissioned Mastromonico to examine Plaintiffs' plans and their construction site. Plaintiffs also point out that the second stop work order was issued by the Village Administrator, Stephen McCabe, rather than by the Village Building Inspector, Eugene Huey, who had issued the first order—a fact that Plaintiffs attribute to a suspicion on the part of Village officials that Huey was too sympathetic to Plaintiffs.

Plaintiffs thereupon filed an appeal with the Village Zoning Board of Appeals ("ZBA"), which they contend entitled them to recommence construction pending the appeal under section 712(a)(6) of the New York Village Law. However, acting at the discretion of Village officials, police appeared at Plaintiffs' property and threatened to arrest them if construction were recommenced. Additionally, the Village ZBA chairman, according to Plaintiffs, refused to sign subpoenas to compel witnesses to attend their ZBA hearing.

Plaintiffs hypothesize that the Mayor took a particular interest in the matter of their house because he was interested in obtaining employment from the ex-husband of one of the complaining neighbors, Mrs. Fragomen. The record contains no evidence concerning the state of relations between the former spouses that might support any such inference. However, it is clear that the Mayor took an interest in developments on this piece of property. It is also possible to conclude, viewing the evidence most favorably to Plaintiffs, that Irvington officials engaged in somewhat unorthodox behaviors concerning this property.

In any event, the Village Administrator issued the stop work order, on the theory that the original building permit had been issued in error due to the erroneous location of the driveway cut. The stop work order was accompanied by a request that the Plaintiffs seek approval for the relocation of their driveway from the Irvington Planning Board, which had final authority to approve all matters relating to subdivision plans. Plaintiffs made no such application. Neither did they bring any proceeding challenging the official action as improper pursuant to New York Civil Practice Law and Rules Article 78.

Negotiations dragged on for several months. In October 1998, the Village filed an action against Plaintiffs in the New York State Supreme Court, Westchester County, by Order to Show Cause, seeking a declaratory judgment that the 1988 subdivision plan was enforceable by the Village. A month later, Plaintiffs commenced this action, alleging various violations of their constitutional rights because Irvington officials had allegedly prevented them from completing their house. In December 1998, the Village rescinded the stop-work order, but only upon notice to Plaintiffs that, if they proceeded, they did so at their own risk. Plaintiffs did not resume construction, however, preferring to litigate rather than build.

This Court first took note of the case when defendants made a motion to dismiss. Cognizant that the Second Circuit has instructed District Court judges not to become involved in local land use matters, even where a plaintiff asserts denial of federal due process, *see Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999), and aware that I might not be able to decide certain of Plaintiffs' constitutional claims without determining whether the Village's actions comported with applicable State laws and Village regulations, this Court stayed proceedings pending adjudi-

cation of the relevant land use issues in the action brought by the Village in the State Supreme Court. Unfortunately, a few weeks later, Justice Rosato—unconstrained by the Second Circuit's distaste for Federal interference in local land use matters—stayed his hand pending this Court's determination. Thus, I ordered the parties to complete discovery on an expedited basis. Defendants moved for summary judgment upon completion of discovery.

Having reviewed the papers submitted by the parties and heard oral argument, I grant the motion for summary judgment dismissing plaintiffs' federal claims and return them to the New York State Supreme Court—where they have belonged all along—to litigate their challenge to the actions of the local officials and the various zoning and planning issues implicated by this entire situation.

### Substantive Due Process claim (First Cause of Action)

Plaintiffs first contend that their substantive due process rights were violated by the issuance of the stop work orders—in particular, the August 11 stop work order (the earlier one having been promptly rescinded). However, Plaintiffs have failed to make out such a claim, for three reasons: (1) they have no federally protectable property right in their building permit (which was never revoked, but was subject to a stop work order); (2) the Village's actions in issuing the stop work order was not "outrageously arbitrary" or a "gross abuse of governmental authority" and (3) there has been no final decision by the Village denying Plaintiffs the right to build the driveway in the desired location, so their claim is not yet ripe for adjudication.

■ Plaintiffs claim an arbitrary and capricious denial of their building permit by Village of Irvington officials. They rely on cases in which it was held that a party has a property interest in a building permit, so that revocation of same can give rise to a constitutional violation. *See Town of Orangetown v. Magee,* 88 N.Y.2d 41, 643

N.Y.S.2d 21, 665 N.E.2d 1061 (N.Y.1996); *Faymor Dev. Co., Inc. v. Bd. of Standards and Appeals of the City of New York,* 45 N.Y.2d 560, 410 N.Y.S.2d 798, 383 N.E.2d 100 (N.Y.1978); *Temkin v. Karagheuzoff,* 34 N.Y.2d 324, 357 N.Y.S.2d 470, 313 N.E.2d 770 (N.Y.1974). However, Plaintiffs' building permit was never revoked, and the stop work order issued by the Village (the second, based on the driveway location issue) has been lifted by agreement of the parties.

Plaintiffs apparently want the Court to equate the Village's temporary interference with their right to continue building—because of the stop work order—with a denial or revocation of a building permit. Those two things cannot be equated, however. Under New York law, Plaintiffs, as holders of a building permit showing a non-conforming driveway location, did not have a vested property right (i.e., a clear entitlement, rather than a mere expectation) to build their house in conformity with those plans. *See DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124 (2d Cir.1998). Although their site plan—with the driveway in the location they wish to build it in—was approved by the Village, the Village later determined that the site plan was inconsistent with the subdivision plat and had, therefore, been erroneously approved by the Building Inspector. New York courts have repeatedly held that a landowner does not have a vested property right to a building permit issued erroneously by a building inspector, and that there can be no estoppel against the government in such a situation. *See Parkview Assocs. v. City of New York,* 71 N.Y.2d 274, 525 N.Y.S.2d 176, 519 N.E.2d 1372 (1988); *McGannon v. Board of Trustees of the Village of Pomona,* 239 A.D.2d 392, 657 N.Y.S.2d 745 (2d Dept.1997) (citing *Parkview Assocs.*). Therefore, Plaintiffs have not demonstrated that they were deprived of any federally-protected right.

■ Second, even if this Court were to find that Plaintiffs were not required to locate their driveway as shown on the sub-

division plat under applicable state and local laws (despite the Second Circuit's admonition that I ought to do no such thing), that would not necessarily make out a constitutional violation. The Second Circuit has stated that: "Substantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental action that might fairly be deemed arbitrary and capricious and for that reason correctable in a state court lawsuit seeking review of administrative action." *Natale*, 170 F.3d at 263 (referencing the arbitrary and capricious standard employed in an Article 78 review of an administrative determination). The Court then articulated the standard of review applicable in this Circuit to land use claims such as this one: "Substantive due process standards are violated only by conduct that is *so outrageously arbitrary as to constitute a gross abuse of governmental authority.*" *Id.* at 264 (emphasis added).

Plaintiffs have clearly not shown that the Village's actions—even if erroneous—were *outrageously* arbitrary and a gross abuse of governmental authority. The record before me indicates that the Village discovered that Plaintiffs' driveway was being constructed in a place other than that provided for on the approved subdivision plat, issued a stop work order, and requested that Plaintiffs either construct the driveway in conformance with the subdivision plat or apply to the Village Planning Board for approval of the new location. The Village Administrator, who issued the stop work order, had authority under the Village Code to take issue such an order, and has provided a rational explanation for having done so. Whether or not plaintiffs could prevail on a lesser, arbitrary-and-capricious standard in an Article 78 is irrelevant; on this record, the higher constitutional standard has not been met.

■ Third, there has been no substantive due process violation because there has been no final decision by the Village in this case. *See Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 200, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (holding that taking claim was not ripe because developer did not seek a variance from the determination of the planning commission to apply recently enacted density requirements reducing the development potential of the land); *Southview Associates, Ltd. v. Bongartz,* 980 F.2d 84, 86 (2d Cir.1992) (holding that the "finality" requirement of *Williamson* applies also to substantive due process claims that governmental conduct was arbitrary and capricious), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993). Ripeness is an issue of law to be determined by the Court. *See Southview Assocs.,* 980 F.2d at 95. Unless a court has a final decision before it, it cannot be determined whether the government conduct violated due process. See *id.* at 97; *Taylor Investment Ltd. v. Upper Darby Township,* 983 F.2d 1285, 1290 (3d Cir.1993). In *Southview,* the Second Circuit held that the decision by a state environmental board not to permit a residential development because of its impact on wildlife was not final because the record indicated the board was amenable to considering a less intrusive, less intensive plan of development. And in *Taylor,* the Court of Appeals for the Third Circuit held that a landowner's substantive due process claim based on arbitrary and capricious revocation of its use permit by town officials was not ripe because the landowner never went to the zoning hearing board, which could have corrected matters and permitted the requested use.

In this case, Village officials repeatedly urged the Plaintiffs to apply to the Village Planning Board for approval of the sought change in the location of the driveway. The Village has made no final decision to deny or to grant such an application because the Plaintiffs have never made one. Thus, there is no final determination to challenge in this Court.

Plaintiffs assert that they did not apply to the Planning Board for approval of the change because they had "lost all trust" in

the Board. (Ferdinand Gottlieb Dep. at 218.) However, the Plaintiffs have articulated nothing that would support a conclusion that an application to the Planning Board would have been futile.[1] Rather, Plaintiffs' depositions reveal that their decision not to make an appeal to the Planning Board was purely strategic. They wished to avoid the possibility of an adverse decision by the Board, and they wished to preserve their challenge to the stop work order for the courts (specifically, the federal courts). Ferdinand Gottlieb, Plaintiff Gottlieb's father, who designed Plaintiffs' house, testified as follows:

Q. What would you have lost by going to the Planning Board to see if it would approve the driveway in its current location?

A. I have learned that one thing you don't want to do is you don't want to get a denial against you. It is better to leave things in an open state and rely on the law, period, rather that trying to get approval from an in-house body, which I felt would be detrimental to us if they deny it. Then we have submitted—we have recognized their authority and, therefore, it would—it may be detrimental....

Q. As far as you are aware, is there any pending legal proceeding that could bring about an official approval of the driveway in its current location?

A. The courts. Let the Federal courts decide because the State courts, to my opinion, from my information, felt there are more issues involved here. The driveway is just one issue. There are many other issues here.... (Ferdinand Gottlieb Dep. at 222–223.)

Plaintiff Peter Gottlieb testified to the following:

Q. [I]f the Planning Board decided to allow you to keep the driveway in its existing location, wouldn't you have been better off?

A. Perhaps.

Q. And wasn't that what was being suggested to you, that the Planning Board could approve that location?

A. Yes.

Q. So you didn't believe they really were going to, isn't that right?

A. No.

Q. And that's because you thought they were insincere in making the offer, isn't that right?

A. I don't know if the offer was necessarily—I don't necessarily think of it as being insincere. I think of it as being another way to delay the project. The construction loan was running out of time.

Q. The Project was already being delayed at that point, wasn't it?

A. Yes.

Q. You had a stop work order, in fact, right?

A. Yes.

Q. Wasn't this, in your mind, an opportunity to try to get the stop work order lifted if the Planning Board okayed the driveway?

A. After the discussions with the attorneys, we thought that our best route was not to do this....

Q. Now, did you attempt to speak to any of the members of the Planning Board to find out whether they had an open mind about this application.

A. No.

Q. Do you know who the members of the Planning Board were?

A. Nope....

Q. As far as you know, are there any members of the Planning Board who don't want you to build this house?

A. I have no knowledge of anything about—I have no knowledge about anything of the members of the Planning Board. I guess the answer would be no. (Peter Gottlieb Dep. at 100– 103.)

---

1. And even if they could show futility, it is not entirely clear that the Second Circuit even subscribes to a futility exception. *See Honess*

*52 Corp. v. Town of Fishkill,* 1 F.Supp.2d 294 (S.D.N.Y.1998).

Plaintiffs' strategy was not a wise one. Their constitutional claims are not ripe for adjudication because they have not sought or received a final decision by the Village as to the driveway change they sought. Their first cause of action is dismissed.

### Equal Protection claim (Second Cause of Action)

Plaintiffs next contend that the Village has violated their Fourteenth Amendment right to equal protection of the laws, because their next-door-neighbors, the Rancics, also constructed their driveway in a non-conforming location. This claim, too, is dismissed.

■ Plaintiffs assert an equal protection violation based on alleged selective enforcement of the Village's zoning and building regulations. To prevail on an equal protection claim, plaintiffs must prove that (1) compared with others similarly situated, they were selectively treated, and (2) they were singled out for such disparate treatment as a result of a malicious or bad faith intent to injure them. See Crowley v. Courville, 76 F.3d 47, 52–53 (2d Cir.1996); Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir.1995).

■ Plaintiffs allege that their neighbors, the Rancics, are similarly situated because the Rancic's driveway (fully constructed years ago) also deviates from the location provided for on the subdivision plat. But Plaintiffs do not even allege, let alone offer evidence, that the Village knew of the Rancics' nonconforming driveway location before the driveway was constructed and yet allowed construction to proceed. Therefore, Plaintiffs have not shown that they were selectively treated compared with someone similarly situated. Moreover, even if plaintiffs could prove the Village did know at the time the Rancics were constructing their driveway that it was nonconforming, that alone would not make out an equal protection violation. Failure to proceed against others who are comparably situated is not by itself a basis for finding a denial of equal protection. See Zahra, 48 F.3d at 684. "Equal protection does not require that all evils of the same genus be eradicated or none at all." Id. at 684 (quoting LeClair v. Saunders, 627 F.2d 606, 608 (2d Cir.1980)).

Furthermore, to sustain an equal protection claim based on alleged selective enforcement of the Village's building code, the Plaintiffs must satisfy both prongs stated of the test stated above. Under the second prong, because Plaintiffs have not alleged that they were discriminated against because of race, religion, or to prevent them from exercising a constitutional right, I must review the record for evidence of a malicious or bad faith intent by the Village to injure the Plaintiffs. Plaintiffs conceded at their depositions that they have no evidence that any Village officials intended to injury them. (Peter Gottlieb Dep. at 103–04; Riggs Dep. at 87.) Plaintiffs offered testimony concerning their belief that the Village was trying to get them to abandon the building of their dream home (Ferdinand Gottlieb Dep. at 224–225) and that they felt Village officials may have been trying to accommodate the alleged wishes of neighboring property holders (namely, the Rancics and the Barbara Fragomen) (Riggs Dep. at 80–82). However, Plaintiffs admittedly had no evidence on which to base such feelings. Their suspicions were thus mere speculation. Plaintiff Riggs stated that "It just seemed to me that things were happening to us that had—didn't happen to other people." (Riggs Dep. at 87.) Plaintiff Peter Gottlieb testified as follows:

Q. Again, to the extent that you've been discriminatorily treated by any of those people, you're not aware of what the reason is of it?

A. Correct . . .

Q. Do you think that [Kevin Plunkett's] position on this project is based on anything other than the merits?

A. Could be. It's hard for me to know.

Q. Do you have any reason to think it's a result of anything other than the merits of the application?

A. I don't know.

Q. Do you know whether it's because of political pressure?

A. It could be.

Q. Do you have any facts to indicate that?

A. No. (Peter Gottlieb Dep. at 103–04.)

Plaintiffs' speculations and vague feelings that the Village Planning Board disfavored their building project or wished to delay it do not suffice to create a genuine issue of material fact. Even viewing the evidence in the light most favorable to the plaintiffs, as I must on a motion for summary judgment, I find they cannot maintain a selective enforcement claim.

### Fifth Amendment Taking Claim (Third Cause of Action)

■ Plaintiffs' third cause of action alleges that their property was "taken" by the Village of Irvington without just compensation. A "taking" claim under the Just Compensation Clause of the Fifth Amendment is subject to the finality requirement of *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186–93, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), so this claim must be dismissed. *See Southview Assocs.*, 980 F.2d at 96. As discussed above with respect to Plaintiffs' substantive due process claim, there was no final decision by the Village on Plaintiffs' driveway location issue. Their failure to apply to the Planning Board for approval of the desired driveway location precludes them from challenging the stop work order and from seeking any damages allegedly flowing from it in this Court.

Plaintiffs are also precluded from raising a taking claim in this Court because *Williamson* holds that landowners alleging a regulatory taking must first seek compensation through available procedures under State law. *See Williamson*, 473 U.S. at 194–97, 105 S.Ct. 3108. This requirement stems from the Fifth Amendment, which "does not proscribe the taking of property, it proscribes taking without just compensation." *Southview Assocs.*, 980 F.2d at 99. New York's Eminent Domain Procedure Law provides a compensation procedure to Plaintiffs, *see Ward v. Bennett*, 214 A.D.2d 741, 625 N.Y.S.2d 609 (2d Dept.1995), and they have failed to pursue it. Because Plaintiffs fail to meet both the requirements of *Williamson*, their taking claim is not ripe for adjudication.[2]

### Monell Bars Claims against the Village of Irvington

■ It is well established that a municipality like the Village of Irvington cannot be held liable under Section 1983 unless Plaintiffs have shown that a custom, policy or practice of the municipality caused their injury. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Mr. Gottlieb and Ms. Riggs have alleged no Village policy regarding the issuance of stop work permits or the allowance of deviations from subdivision plats that caused their alleged injury. Rather, their claim is that they were *not* treated according to existing Village policy or regulations. Therefore, Plaintiffs' Section 1983 claim against the Village must be dismissed.

**2.** Plaintiffs' attorney contended at oral argument before this Court that *Williamson* applies only to regulatory takings, and distinguished the taking at issue in the present case as an "ad hoc" taking, which he described as "not a legislative type of a taking; it's by specific actions." (Transcript of Oral Argument at 25–26.) Neither *Williamson* nor any other case cited by Plaintiffs sets forth any such limitation. Although *Williamson* involved the refusal to issue a building permit, rather than the issuance of a stop work order, as here, *see Williamson*, 473 U.S. at 176–82, 105 S.Ct. 3108, Plaintiffs have failed to make clear precisely how interference with construction by way of a stop work order is to be rationally categorized as any less "legislative" for takings purposes than the denial of a building permit.

The Court can only assume that Plaintiffs, by their references to "ad hoc" takings, have confused the "ad hoc" factual inquiry developed by the Supreme Court for the determination of liability for regulatory takings. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).

*Qualified Immunity*

[redacted] A government agent is entitled to qualified immunity under Section 1983 if it was objectively reasonable for him to believe his conduct did not violate the law. *See Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Plaintiffs here concede that there is a discrepancy between the location of the driveway on the filed subdivision plat and the location of the driveway as they planned to build it. The Village Defendants received an engineer's report that showed the driveway discrepancy. Based on that report, they directed the issuance of a stop work order. They also advised the Plaintiffs to apply to the Planning Board to have the desired driveway location approved. Based on the evidence before me, I conclude that no reasonable juror could find that it was unreasonable for the individual Defendants to believe that it was within their power to direct the issuance of such a stop work order and for them to have issued such an order. Thus, the individual Defendants are entitled to qualified immunity for issuing the stop work order.

*Supplemental State Law Claims*

The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, particularly since I have determined that this dispute belongs in state court, if it belongs in court at all.

This constitutes the decision and order of the Court